## J. W. PRICE v. STATE.

No. A-1540.    Opinion Filed May 10, 1913.

(131 Pac. 1102.)

1. **INDICTMENT AND INFORMATION—Construction of Indictment—Sufficiency.** (a) The common-law doctrine of a strict construction of criminal law and all proceedings in criminal cases, and that an indictment should be certain to a certain intent in every particular, is not in force in Oklahoma.

(b) If an indictment is framed in such language as to enable a person of common understanding to know what is intended thereby, and sufficiently certain to enable a defendant

to prepare his defense, and to plead a judgment of acquittal or conviction in bar to a subsequent prosecution for the same offense, such indictment. is sufficient.

(c) Judges are naturally in sympathy with lawyers, and are always anxious to do all that they reasonably can to please them and to promote the interests of the legal profession, but it is a gross misconception to suppose that they should allow a desire to make business for lawyers to in the least influence their decisions. Courts are established and supported by the people for the sole and exclusive purpose of administering justice, and thereby giving equal protection to all classes, occupations, and professions. The judge who does not recognize and live up to this ideal is a disgrace to the position which he occupies, and is a menace to the state in which he holds office.

2. **WITNESSES—Competency—Conviction of Crime.** The fact that a person may have been convicted of any felony, except that of perjury, does not disqualify him from testifying as a witness in the courts of Oklahoma.

3. **RECEIVING STOLEN GOODS—Evidence—Accomplice.** Where the evidence clearly shows that a defendant is guilty of knowingly receiving stolen property, a conviction will not be reversed because there may be some evidence in the record which tends to establish the fact that he was a principal in the original larceny.

4. **INSTRUCTIONS—Circumstantial Evidence.** An instruction applicable to the law of circumstantial evidence should only be given in cases where the state relies entirely upon such evidence.

5. **RECEIVING STOLEN GOODS—Elements of Offense—Possession —Evidence.** (a) In order to sustain a conviction for knowingly receiving stolen property, manual possession by the defendant of such property is not necessary. It is sufficient if such property be received by an authorized agent or representative of the defendant.

(b) Where a defendant receives stolen property under such circumstances that he must have believed that it was stolen, a conviction for knowingly receiving stolen property will not be reversed for want of evidence.

(Syllabus by the Court.)

*Appeal from Superior Court, Pittsburg County;*
*P. D. Brewer, Judge.*

J. W. Price was convicted of receiving stolen property, and he appeals. Affirmed.

W. J. McCully testified that he was a policeman in the city of McAlester; that on the 30th day of March, 1911, he visited the meat market of appellant in the city of McAlester; that a negro named Vaughn was there working for appellant; the purpose of witness was to search for some meat which had been stolen; that he found some meat there that was fresh, and some that was put up in narrow strips and wrapped in paper; that he also found some ham and some sausage; he also found a number of crates which were not opened; that they were marked Morris & Co., Oklahoma City; that some of the meat found in the butcher shop of appellant was found lying on the floor in a box, some was on the counter, and some was in the refrigerator; witness testified that he telephoned for appellant; witness says, "What about this meat proposition?" appellant replied, "What meat?" witness said, "This meat that has been coming here at night?" he said, "When I go down of mornings about 8 o'clock my butcher tells me that there is some stuff he found here when he opened the door this morning;" appellant and witness went into the butcher shop together, and witness said to Vaughn, "Tell us what he said before Dr. Price came down." Vaughn replied that he had been suspicious of this work for some time because some of the meat had dirt on it and some of the bottoms of the buckets were bursted, and that he, Vaughn, had stated to appellant that sooner or later some of them were going to get into trouble about this, and that appellant said to him that he, appellant, was paying Vaughn for his work, and for him to cut and sell the meat found in that shop; witness then asked appellant what, if anything, he had to say to this; appellant replied he did not have anything to say. Appellant stated, further, that he had arrangements with a white man and a negro boy named Len Wallace; that the white man would send the negro boy to collect, and that sometimes, when meat would be found in the shop, the negro boy would come and collect for it; he said this arrangement had been going on two or three weeks; he said he did not know who the white man was; appellant also said the

negro Vaughn kept the key to the shop; witness also testified that Len Wallace, the negro boy referred to, had pleaded guilty to the theft of this meat.

E. M. Bounsaville testified for the state that he was constable of Pittsburg county; that on the morning in question it was his duty to watch the train on the Rock Island Railroad going east from Oklahoma City; that the train had some Morris & Co. refrigerator cars to it; that when the train passed he noticed the side door of one of these refrigerator cars open; he saw a man in the car rolling out boxes of meat; afterwards two men came along and picked it up, both of whom were negroes; witness heard them talking about getting the stuff away, but could not understand what they said; a third man was present, but witness was not able to see him so as to identify him; that witness arrested one of the negroes and took him to jail; witness then returned to the place where the meat had been taken from the car, and found only empty boxes marked Morris & Co. from which sausage had been taken; witness then testified substantially to all of the facts testified to by W. J. McCully.

Len Wallace testified for the state that he was then confined in the penitentiary at McAlester on his plea of guilty to having burglarized a Morris & Co. car in McAlester on the night of March 30th; that witness was 19 years old, and was acquainted with appellant, and had known him for two years; shortly before the crime was committed when witness was passing appellant's butcher shop he was called in by appellant, and asked by appellant if he could bring him some more of that stuff witness had already sold to appellant; witness replied that he could; appellant told him to bring some around that same night; this was Tuesday night; appellant told witness he wanted ham, bacon, and lard; that witness attempted to get this stuff the following night, but some one was watching the cars, and he was unable to do so; that on Friday night witness got the stuff out of the car, and carried and delivered it to the market place of appellant; that he was assisted by Dave Coleman and Arch Johnson; that witness got the key to the market from

Vaughn, and placed the stuff in the market; that witness had told appellant where he was getting the stuff from; that appellant told witness he would pay him one-half of what the stuff would cost him at the packing house.

Earl Martin testified that he was in the employment of the railroad company at Haileyville as seal clerk; that on the morning of March 30th he found a freight car from Oklahoma City with the seal broken; this was a Morris & Co. car.

J. E. Padgett testified for the state that on the morning of the 30th of March he was a freight conductor, and went out of Shawnee on No. 92, and passed through the city of McAlester; that he had with his train some cars belonging to Morris Packing Company; that, when he got to Haileyville, he was informed that one of the meat cars had been broken open and robbed.

W. H. Huntley testified that he was beef scaler for Morris & Co. at Oklahoma City, and that his duty was to receive and check into cars whatever might be going out in them; that on the date in question the cars were loaded with meat belonging to Morris & Co. consigned to Memphis, Tenn.

A number of other witnesses were introduced by the state whose evidence corroborated the testimony already introduced.

Sam Tucker testified for appellant that he was in appellant's place of business about the middle of February; that a white man and Len Wallace came into the butcher shop, and were talking to appellant, and told him they could put the meat in cheaper; that appellant figured with them and told them he would see them later.

Appellant testified that some time before the 30th of March a white man and Len Wallace came to appellant's place of business, and asked him what he was paying for meat; appellant replied he was paying packing house prices; they replied they could save him a cent or cent and a half a pound; that appellant gave them an order for bacon; the understanding was that Len Wallace was to deliver the goods; that Len Wallace did deliver some meat and appellant paid him for it;

that there was no agreement to these parties stealing the meat, and appellant had no suspicion of the kind.

Appellant introduced a number of witnesses who testified that his previous reputation for honesty was good. A number of other facts were proven by both sides which have no direct bearing upon the guilt or innocence of appellant.

*Wilkinson & Keith,* for appellant.

*Smith C. Matson* and *C. J. Davenport,* Asst. Attys. Gen., for the State.

FURMAN, J. (after stating the facts as above). First. The charging part of the information in this case is as follows:

"Comes now Robert Tarter, the duly qualified and acting county attorney in and for Pittsburg county, state of Oklahoma, and gives the superior court of Pittsburg county, state of Oklahoma, to know and be informed that J. W. Price and Isaiah Vaughn did, in Pittsburg county, and in the state of Oklahoma, on or about the 30 day of March, in the year of our Lord one thousand nine hundred and eleven and anterior to the presentment hereof, then and there unlawfully, feloniously, and knowingly receive and buy from Len Wallace, Dave Coleman, and Archie Johnson the following described property, to wit: Certain salt and fresh meats, consisting of sausages, neck bones, and bacon, of the value of $50.00, the property of and taken from the possession of the Chicago, Rock Island & Pacific Railway Company, a corporation, the said J. W. Price and the said Isaiah Vaughn then and there well knowing the said property to have been then and there recently stolen from the said Chicago, Rock Island & Pacific Railway Company, a corporation, contrary to the form of the statutes in such cases made and provided and against the peace and dignity of the state."

To this information appellant demurred upon the ground that the facts set forth in the information do not constitute a public offense, and that said information is indefinite and uncertain. This demurrer was by the court overruled, to which appellant excepted.

Under the old common-law doctrine of strictly construing

criminal law and all proceedings in criminal cases, and that an indictment or information should be certain to a certain intent in every particular, the objection now urged to this information would undoubtedly be good. But these doctrines have long since been repudiated in the state of· Oklahoma. It is true that an indictment should ·be reasonably certain as to the offense charged in order that the defendant may not be surprised and may be able to prepare to make his defense, and also to enable him to plead a judgment of acquittal or conviction in bar to a subsequent prosecution for the same offense. This is all that a defendant is in reason and justice entitled to. If an indictment is couched in such language as to enable a person of common understanding to know what is intended, it is all that the law requires. See section 6696, Comp. Laws 1909 (Rev. Laws, 5738). See, also, section 6704, Comp. Laws 1909 (Rev. Laws, 5746). See, also, *Bowes v. State,* 8 Okla. Cr. 277, 127 Pac. 883. The prosecution in this case was based upon section 2603, Comp. Laws 1909, (Rev. Laws, 2664), which is as follows:

"Every person who buys or receives, in any manner, upon any consideration, any personal property of any value whatsoever, that has been stolen from any other, knowing the same to have been stolen, is punishable by imprisonment in the state prison not exceeding five years, or in the county jail not exceeding six months, or by fine not exceeding two hundred and fifty dollars, or by both such fine and imprisonment."

The essential elements of this crime consist in receiving property that had been stolen from any other person, knowing such property to have been stolen. We do not see how it is possible for any person of common understanding to· read this information and not understand exactly what appellant was charged with. We also think that the offense is sufficiently described to enable appellant to plead this judgment in bar of a second prosecution for the same offense, and we think the information is sufficient.

An instructive case in support of our views is that of *State*

*v. Whitton,* 72 Wis. 18, 38 N. W. 331. The information in that case was as follows:

"I, J. W. Wegner, district · attorney for said county, hereby inform the court that on the third day of September, in the year one thousand eight hundred and eighty-seven, at the said county, the said defendant, Richard Whitton, feloniously did buy, receive, conceal, and have, and did then and there aid in the concealment of goods, chattels, and property, to wit, one hunting-case gold watch of the value of forty dollars, the said property, goods, and chattels being then and there the property of one J. P. Johnson, he the said Richard Whitton, then and there knowing the said goods, chattels, and property had theretofore been feloniously stolen, taken, and carried away, contrary to the statute in such case made and provided, and against the peace and dignity of the state of Wisconsin."

And the court sustained its sufficiency, and said:

"There can be no doubt but that the district attorney intended to inform against the defendant for the crime of receiving stolen property as defined by section 4417, Rev. St. 1878. There is certainly enough stated in the information to inform both the defendant and the court of the intention of the district attorney in that respect. That being admitted, can it be said that the defendant has been, or can be, prejudicated by the lack of definiteness in the information, after having a fair trial upon the merits of the charge as intended to be made by the prosecuting attorney? We certainly think he has not been prejudicated by, the lack of a more full statement of the charge in the information; and, unless there is some well-settled rule of law which forbids sentence upon this information, judgment ought not to be arrested. * * * The only possible objection to the information under that section is that it omitted to state in the language of the statute that the defendant received, etc., 'stolen money, goods, or property,' that being the language used in said section 4417, Rev. St. We think that the allegation that he received the goods of a stranger, knowing that they had been theretofore stolen, is a substantial statement of the offense defined by section 4417. We do not think there could have been any doubt either in the mind of the court or of the defendant as to what offense he was charged with."

In *State v. Allemand,* 25 La. Ann. 525, the court in the first paragraph of the syllabus held:

"An indictment charging that defendants received the property stolen with a felonious intent knowing the same to have been stolen at the time is in sufficient conformity with the statute."

In the body of the opinion the court said:

"The first, second, and fourth grounds of the assignment of errors are substantially the same—that the indictment was fatally defective in not stating that the defendants received the property feloniously taken or stolen. The charge in the indictment is that defendants 'unlawfully and feloniously did receive and buy a cow, of a red color,' etc.; 'they, the said Charles Allemand, Lewis Allemand, and Joseph Allemand, then and there, well knowing that the aforesaid cow had been taken, stolen, carried away or killed, contrary to the form of the statute,' etc. The object of an indictment is to advise the party accused of the charge against him, to enable him to prepare his defense, and to enable him to plead *autre fois acquit* or *convict* in any subsequent proceedings against him for the same offense."

In *People v. Gough,* 2 Utah, 70, the indictment charged that defendant "did unlawfully and feloniously buy and receive, for his own gain, and to prevent the owners from again possessing their property, sixteen pounds of gold ore of the value of one hundred and twenty-five dollars, of the goods and chattels and personal property of Samuel McIntyre, William McIntyre, James Cunningham, Moroni Edwards, Haskell V. Shirtliff, Jacob Weller, Elijah M. Weller, Herman Barrett, and Oliver Disc; he, the said Richard Gough, then and there well knowing the said property to have been feloniously stolen, taken and carried away, contrary," etc. And the court said:

"(1) The appellant urges that the indictment is defective in not alleging the property to have been stolen. All of the facts or acts have been alleged in the indictment which were specified by the Legislature in defining the offense charged, and we think this was sufficient. The indictment fully informed the defendant as to the charge against him. The common-law strictness is not required under our practice. Some offenses could only be described by giving circumstances, but this is not such a case, and is therefore governed by the general rule; the definition or description of the offense being given in the stat-

ute. *People v. Murphy,* 39 Cal. 56; *People v. Cronin,* 34 Cal. 201, 208; *People v. Parsons,* 6 Cal. 487; *State v. Carr,* 6 Ore. 133; *People v. Rodriguez,* 10 Cal. 51."

If we were to sustain the objections now urged to this information, we would attach more importance to shadows than to substance, and we would elevate forms and ceremonies above justice. While lawyers are not to be blamed for advancing every possible argument in behalf of their clients, yet the courts in the past have gone entirely too far in sustaining frivolous objections. The result is that the uncertainty in the administration of criminal law in the United States has become a reproach to the American people, and the reputation of the profession and the integrity of the courts have been seriously called in question. There is no use in trying to dodge or disguise the truth. This evil lies at the very bottom and foundation of many of the complaints which are now heard about the delays of the law and the inefficiency of the courts and the growing demand for the recall of the judiciary. The courts must redeem themselves, or there is no telling what the result will be. Public confidence can only be restored by a fearless, honest, and independent judiciary. Judges must understand that it is their sole and only duty to serve the people and administer justice. They are being weighed in the balances by an intelligent, justice loving, and long suffering public; and if they are found wanting the fault will be theirs alone. Judges are naturally in sympathy with lawyers, and are always willing to do all that they reasonably can to please and assist the legal profession, but it is a gross misconception, dishonoring alike to the bar and to the bench, to suppose that judges should allow a desire to make business for the lawyers to in the least influence their decisions. They have a far higher duty than this. Courts are established and supported by the people for the sole exclusive purpose of enforcing justice, and it is their duty to see that justice is never divorced from the law, and that no class, occupation or profession is favored at the expense of other classes, occupations, and professions, and justice thereby sacrificed. The judge who

does not recognize and live up to this high ideal is not only a disgrace to the position which he occupies but he is a menace to the good order of society.

We are of the opinion that the information in this case substantially complies with the law, and that the trial court did not err in overruling the demurrer thereto.

Second. When the state's witness Len Wallace was placed upon the stand, counsel for appellant objected to his testifying upon the ground that he had been convicted of the crime of burglary, and was thereby rendered incompetent to testify. The court overruled this objection and permitted the testimony of this witness to be received, to all of which counsel for appellant excepted. Counsel in their brief say:

"The fourth assignment of error is directed at the admissibility of the evidence of Len Wallace and at his competency as a witness. Our statute provides that a person who is confined in the penitentiary is civilly dead and the contention of the plaintiff in error was that on account of that statute he was not a competent witness."

This objection would be good in some jurisdictions, but it is not now and never has been the law in Oklahoma. This question is settled by our statute and by the previous adjudication of our appellate court. In the case of *Martin v. Territory*, 14 Okla. 598, 78 Pac. 88, this question was decided adversely to the contention made by counsel for appellant in a well-considered opinion by Judge Burwell. The court there said:

"During the trial one Brady, who had been convicted of a felony and sentenced to imprisonment for life in the territorial prison, was called as a witness for the prosecution, and the appellant insists that this was reversible error, for the reason that, under the provisions of section 2578, he was civilly dead, and therefore incompetent to testify. This section reads as follows: 'A person sentenced to imprisonment in the territorial prison for life is thereby deemed civilly dead'—and authorities are cited to establish that such an one at common law was not a competent witness. Were the section of the statute just quoted the only statutory provision on the subject, there might be some force in the contention, but counsel have overlooked

other provisions which apply to the case at bar. The statute on which appellant relies has no application to the right of such a person to testify, as a witness, but applies to other civil rights. Section 4209 provides (section 5838, Comp. Laws 1909): 'No person shall be disqualified as a witness in any civil action or proceeding by reason of his interest in the event of the same, as a party or otherwise, or by reason of his conviction of a crime, but such interest or conviction may be shown for the purpose of affecting his credibility.' And under section 5207 (section 6834, Comp. Laws 1909) of the same statutes, the rules of evidence in civil cases are applicable also to criminal cases, except as otherwise provided in the chapter on Procedure Criminal, and nowhere in that chapter is one who has been convicted of a felony disqualified to testify as a witness. Brady was a competent witness."

There is only one exception to the law as stated by Judge Burwell. Section 2190, Comp. Laws 1909, is as follows:

"No person who has been convicted of perjury, or of subornation of perjury, shall thereafter be received as a witness in any action, proceeding or matter whatever upon his own behalf; nor in any action or proceeding between adverse parties against any person who shall object thereto, until the judgment against him has been reversed. But where such person has been actually received as a witness contrary to the provisions of this section, his incompetency shall not prejudice the rights, innocently acquired, of any other person claiming under the proceeding in which such person was so received."

The trial court therefore did not err in overruling the objection made to the witness Wallace upon the ground that he had been convicted of a felony.

Third. It is urged on behalf of appellant that the trial court erred in not advising the jury to acquit appellant upon the ground that the evidence showed that appellant was guilty of the crime of grand larceny, in that he was a party to the original taking. We believe that appellant might have been convicted for grand larceny on the evidence in this case, but it does not necessarily follow that the evidence does not also sustain a verdict for knowingly receiving stolen property. It is the privilege of the county attorney to charge in an indict-

ment the highest possible offense constituted by any act committed; but, if he sees fit to charge a lower offense which is sustained by the evidence and which calls for the infliction of a less degree of punishment, a defendant cannot be heard to complain that he should have been charged with and convicted of the higher offense included in the same acts, because the error of the county attorney inured to his benefit and he is bound thereby.

In discussing this very question in the case of *Walter Howard v. State, ante,* 131 Pac. 1100, this court said:

"Where there is no question as to the guilt of an appellant, this court does not feel called upon to make nice, hair-splitting distinctions as between different offenses. We are far more concerned in the enforcement of substantial justice, the punishment of criminals, and the suppression of crime in Oklahoma, and thereby protecting honest people in their property and rights, than we are in establishing a fine-spun system of criminal jurisprudence."

There are two views to take of the facts of this case. From the standpoint of the state the testimony shows that appellant should have been prosecuted for and convicted of grand larceny. From the standpoint of appellant's testimony he had nothing to do with the larceny of the property in question. But he purchased it under such circumstances as would put an honest man upon inquiry, and as would render him liable on his own testimony to prosecution for receiving stolen property. Under either of these conditions, a conviction for either offense would have been sustained by the testimony.

In the case of *Jinks McGill v. State,* 6 Okla. Cr. 512, 120 Pac. 297, Judge Doyle states the case as follows:

"The testimony in the case conduces to show that 60 gallons of paint in cases of 6 gallons each were stolen on the night of January 2, 1910, from the warehouse, in Guthrie, of the Arkansas Lumber Company, a corporation. About a week afterwards, 18 gallons of this paint was found concealed in the defendant's house. John McGrue and Charlie French testified that they stole three of the cases from the warehouse of the Arkansas Valley Lumber Company, and, assisted by Willie

Guess, carried them to the defendant's home about 11 o'clock that night; that they talked with him before they stole it, and when they delivered it that he paid John McGrue $1.50 for the three cases. There was no testimony offered on the part of the defendant."

And after discussing some other questions Judge Doyle, continuing, says: "Our conclusion is that the appeal in this case is without merit."

In *Anthony v. State,* 44 Fla. 2, 32 South. 819, the seventh paragraph of the syllabus reads as follows:

"On the trial of a person charged with receiving stolen property, testimony on the part of the state tending to prove an arrangement or plan made between the alleged thief and the defendant, whereby the thief was to steal and the defendant was to receive from him a certain kind of property, as the defendant should need it, is admissible, where the testimony tends to show that the particular property charged in the indictment was received by defendant in pursuance of such arrangement or plan."

And in the opinion the court says:

"The tenth assignment is that the court erred in denying the motion to strike out the testimony of witness Conroy as to the shortage of pork loins at or about gala week, 1900. The witness was interrogated as to what Anthony said about an arrangement between him and Moore in reference to the delivery of meat by the latter to the former, and stated that Anthony said there was a shortage of pork loins; and at this point counsel for defendant moved to strike out the answer on the ground that it was too vague, indefinite, and uncertain, and did not give defendant sufficient notice of the offense with which he was charged. This motion was denied, and exception taken. The witness then completed his answer by stating that Anthony said during the last gala week there was a shortage of pork loins in Jacksonville, and he went to Moore and asked him if he could not take care of him and Moore said he could. Anthony said that was the time he started this arrangement with Moore, and it was because he could not get pork loins anywhere else. The gala week referred to was in 1900. We do not think there was any ground of objection on the part of the accused to the introduction of this evidence. It tended to show the be-

ginning, not too remote, of the very arrangement under which the pork loins alleged in the information to have been stolen were received by the accused, and bore on the question of his guilty knowledge. *Copperman v. People* 56 N. Y. 591; and *Coleman v. Same, supra,* 58 N. Y. 555."

In *Sisk v. State* (Tex. Cr. App.) 42 S. W. 985, Sisk was convicted of receiving stolen property. There was evidence in the case from which the jury might have concluded that the defendant was a party to the original taking of the stock; and, although the evidence in the case would have sustained a conviction for larceny, the judgment was affirmed. Judge Henderson said:

"We have examined the record carefully, and in our opinion the proof is unquestioned that appellant at least received the stolen animal from Ed McCoy, if, indeed, he did not, in connection with said Ed McCoy, steal the same. The jury, however, found him guilty of receiving said animal from McCoy knowing at the time he so received her that she was stolen property."

We therefore hold that the appellant was not injured or deprived of any right by being convicted of knowingly receiving stolen property, although the evidence would have sustained a verdict of guilty of grand larceny, and that, therefore, the trial court did not err in refusing to give the instruction requested.

Fourth. Counsel for appellant complain at the action of the trial court in refusing to instruct upon the law applicable to circumstantial evidence. Such an instruction should only be given where the state relies solely upon circumstantial evidence. See *S. S. Star v. State, ante,* 131 Pac. 542, decided at the last term of the court; *John Hendrix v. United States,* 2 Okla. Cr. 244, 101 Pac. 125. In this case the evidence of appellant's guilt is positive and direct, and an instruction upon circumstantial evidence would only have tended to confuse the jury. The court therefore did not err in declining to give the instruction requested.

Fifth. Counsel for appellant complain at the action of the trial court in refusing to give the following instruction:

"The court instructs the jury that if you believe from the evidence that the goods named in the information were stolen by Len Wallace in the nighttime, and that the defendant was at home and knew nothing of the larceny and knew nothing of the existence of such goods, and if you further believe that Len Wallace, together with others, placed said goods in the butcher shop of the defendant without the knowledge of the defendant, and that said goods were taken possession of by the officer before defendant knew that said goods were in his shop, or knew of any larceny being committed, or knew of the existence of said goods, then it is your duty to acquit the defendant."

This instruction was not applicable to the evidence. The testimony plainly shows that the stolen goods were placed in appellant's butcher shop with the knowledge and consent of Vaughn, who was the employee of appellant, and that there was an agreement between appellant and Vaughn on the one side and the thieves on the other that such property would be received at appellant's butcher shop by Vaughn and paid for by appellant. Therefore the possession of Vaughn was the possession of appellant. Speaking on this very subject, 1 Wharton's Cr. Law (10th Ed.) par. 990, is as follows:

"Reception must be substantively proved. Manual possession or touch is unnecessary in order to sustain conviction; it is sufficient if there is a control by the receiver over the goods. A person is said to receive goods improperly obtained as soon as he obtains control over them from the person from whom he receives them; and the mere aiding in the secreting or disposal of the goods constitutes the offense. When the goods were unlawfully received by a servant or wife of the party charged, it is necessary, in order to make him a receiver, that he should have done some act in the way of joining in the reception. The reception of the produce of the goods, however, is not the reception of the goods."

2 Bishop's New Cr. Law, sec. 1139, is as follows:

"Sec. 1139. The Act of Receiving: (1) Under Control.— The leading doctrine here is that the goods must come under the control of the receiver; yet the control need not be manual. For instance—(2) Subordinate—Deposit.—If they are in the hands of a person whom he can command in respect of them,

they may be deemed to have been received. And one who allowed a trunk of stolen goods to be sent on board a vessel in which he had taken passage, was held to have received them. But—(3) Personal Possession—by the receiver of the goods, is necessary to have been acquired where he has no control over their custodian. And—(4) Receiving.—Besides possession, there must be something which may be deemed a receiving of the goods."

Under these authorities and upon every principle of reason and justice, both as a matter of fact and of law, appellant is clearly guilty of receiving stolen goods. Part of them were found in his refrigerator and part upon the counter of his butcher shop, placed there by his employee Vaughn and by his orders. The court therefore did not err in refusing to give the instruction requested.

A number of other exceptions were reserved to instructions given by the court, and also exceptions were reserved to the action of he court in refusing to give certain instructions requested. As far as applicable to the evidence in this case, the requested instructions were all incorporated in the general instructions of the court, and we find the general instructions to be an admirable exposition of the law in which all of the rights of appellant were properly protected. The testimony presents as clear a case of receiving stolen property knowing it to have been stolen as could be made out. Conceding all that counsel for appellant could claim in behalf of their client, based upon his own testimony, and that is that appellant was not a party to the original theft, yet his own testimony shows that he must have believed and known that the property was stolen. The man who purchases property from entire strangers and receives it at night under such unusual circumstances as those testified to by appellant himself does so at his peril, and cannot be heard to say that he did not believe that the property was stolen. If he did believe he was receiving stolen property, he was just as guilty as if he had positive knowledge of that fact. 2 Bishop's New Cr. Law, sec. 1138, is as follows:

"As foundation for the criminal intent, without which there

can be no crime, and by the statutory terms, the receiver must know the goods to have been stolen. And this knowledge must exist at the very instant of the receiving. It need not be such direct knowledge as comes from witnessing the theft; but in the words of Bramwell, B., 'it is sufficient if the circumstances were such, accompanying the transaction, as to make the prisoner believe' the goods had been stolen."

We regard this as clear a case of guilt of knowingly receiving stolen property as could be made out by human testimony.

We find no error in the record, and we believe that justice has been done in the conviction of appellant. The judgment of the lower court is therefore affirmed.

ARMSTRONG, P. J., and DOYLE, J., concur.