## O. L. CAMP v. STATE.

No. A-9424.  April 7, 1939.
(89 P. 2d 378.)

Mathers & Mathers and H. F. Tripp, all of Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Jess L. Pullen, Asst. Atty. Gen., and Lewis R. Morris, Co. Atty., of Oklahoma City, for the State.

BAREFOOT, J.  The defendant was charged in Oklahoma county with the crime of receiving stolen property; was tried, convicted, and sentenced to pay a fine of $75, and serve six months in the county jail.

The statute under which defendant was charged, Okla. St. 1931, § 2265, 21 Okla. St. Ann. § 1713, is as follows:

"Every person who buys or receives, in any manner, upon any consideration, any personal property of any value

whatsoever, that has been stolen from any other, knowing the same to have been stolen, is punishable by imprisonment in the penitentiary not exceeding five years, or in the county jail not exceeding six months, or by a fine not exceeding $250, or by both such fine and imprisonment."

The evidence in this case reveals that Lee G. Yaple was a traveling salesman with Weyeth Hardware Company, and living in Oklahoma City. That he carried with him numerous samples of articles sold by him, and often kept them in his garage at his home. That on the night of April 23, 1937, numerous articles of samples were stolen from his garage, which was locked but broken into. Two young boys, Marion Nasche and Jimmie Dickerson, ages 16 and 17, respectively, who had come to Oklahoma City from Texas a few days prior to this time, and were rooming at the Gladstone Hotel, admitted stealing this property, and selling the same to defendant. They both testified to this effect.

The proof showed that the property was of the reasonable wholesale value of $90.65, and was sold to the defendant for $13. The property as described in the information was as follows:

"One Safe Flex fan of the value of $5.25; one Safe Flex fan of the value of $1.75; one Polar Fan valued at $1.07; three auto tubes valued at $1.06; one light socket value $1; one light socket value 88c; all gloves value $15; Sam Brown belt value $7.50; one pair hair clippers value 66c; one hair clipper value $1; one sewing tray value $2.50; leather of the value of $8; one electric comb value $1; knives of the value of $7; silverware of the value of $6; brushes of the value of $20; the sample cases of the value of $1, all of a total value of $90.65 * * *."

Practically all of this property was new and much of it had never been removed from the original package. This property, which had been placed in suitcases, was taken by the boys from their room in the Gladstone Hotel, to the second-hand store of defendant which was located at 117 South Harvey street, Oklahoma City. They entered the store and saw defendant personally, and asked him if he

wanted to buy some brushes, fans, etc., and he informed them he would have to see the property. They returned to their room and got a portion of the property and brought it to the store of defendant, where he inspected it, and they asked $10 for it, and defendant told them he would give only $8. They finally agreed, but told him they had other property, which at his suggestion they went and got and returned to the store of defendant and asked him $20 for all of the property. It was finally purchased for $13. The defendant had one of the boys, Marion Nasche, sign his books when there the first time. He signed the name "George Doss," and when he returned and signed the books the second time he signed the name "C. Hammond."

Defendant, testifying in his own behalf, stated that he was in the second-hand business, and had resided in Oklahoma City since 1919, and had never been arrested or convicted of any crime. He corroborated the state's witnesses with reference to the purchasing of the property and the price paid. He stated that the price paid was a fair price, and that the goods were bought in the open and placed upon the shelves of his business house in plain view of customers, with the exception of a silver platter and certain knives and forks which he had taken to his residence. That when the officers came to his place of business he turned over to them all the property which he had purchased, including the property that had been taken to his home. He testified that the boys from whom he purchased the property told him, in answer to his question, that they were salesmen, and were going out of business and were disposing of their samples, which they had a right to do. That he did not examine his books after they were signed, and did not know that two different names were signed thereto.

A clerk, Sam Massey, corroborated defendant's testimony as to the purchase and sale of the goods to defendant, and stated that they told him they were over 22 years of age.

Other witnesses, testifying for defendant, said that the price paid by defendant for the goods was a fair and reasonable price. Other witnesses testified to his good character and reputation.

On rebuttal, the state offered C. W. Kemp, who was head of the stolen goods department of the city police department. He identified a statement received by his department from defendant on the dates covering the above transaction. This statement was presented by defendant in compliance with a city ordinance requiring these daily reports. The report and a book offered by defendant when witness signed his name were introduced in evidence, but a copy of neither appears in the case-made.

Under the well-defined principles of law, as outlined by the many decisions of this court, it is necessary in a case of this character, not only for the state to show that the goods have been stolen, but it is necessary to show that the party receiving the property had knowledge at the time the property was received that it had been stolen. By this expression it is not meant that it is necessary for the person receiving the same to have actually seen the theft of the property. It is sufficient if the facts are such as to cause an actual belief that the property was stolen. Price v. State, 9 Okla. Cr. 359, 131 P. 1102; 2 Bishop's New Criminal Law, sec. 1138. Some cases have held that a conviction should be sustained if the facts were such "that in all probability" would make the accused believe that the property had been stolen. This doctrine is not upheld in this state. Wingfield v. State, 55 Okla. Cr. 374, 30 P. 2d 930; Weaver v. State, 30 Okla. Cr. 309, 235 P. 635; Wilson v. State, 55 Okla. Cr. 22, 24 P. 2d 296.

Other cases have held that where the proof would "put a man of ordinary intelligence and caution on inquiry," that this was sufficient. This doctrine is not upheld by the decisions of this court. Pickering v. United States, 2 Okla.

Cr. 197, 101 P. 123; State v. Denny, 17 N. D. 519, 117 N. W. 869.

The knowledge necessary may be proved by direct or circumstantial evidence, or by both. Within well-defined principles of law each case must rest upon the facts of that individual case. By reason of the nature of the crime it is generally necessary for the state to rely upon circumstantial evidence in cases of this character.

The party who purchases property from utter strangers and receives it under unusual circumstances, and especially where all the facts of the case are passed upon by a jury, and the jury has come to the conclusion, after hearing the facts and circumstances, that the defendant had knowledge that it was stolen property, and by so rendering their verdict, it cannot be successfully maintained in an appellate court that defendant did not believe the property was stolen. He was just as guilty if he believed it was stolen property as if he had positive knowledge of that fact. Applying the above principle of law to the facts in the instant case, we would not be justified in reversing this case.

Counsel for defendant, in their brief, say:

"We most respectfully submit it would be a travesty upon justice, a rape upon the fundamental principles of law and in violation of every decision that has been rendered by this Honorable Court, and an injustice that all the spices of Arabia could not cure, and would disgrace and bankrupt an honest citizen, an honest merchant and a blameless family and would not tend to enforce the law, but would cause hatred and disrespect to the law of our state and nation and there would be a great injustice inflicted or could be inflicted upon a citizen of our state, and without extending this argument, which could be for many hours, but with an abiding confidence in the wisdom of this court, we consign the future hopes, the tears of the loved ones and the laws of our nation to the bosom of this court."

This argument was eloquent and persuasive. It should have, and no doubt did have, influence on the jury, because

by their verdict they found the defendant guilty but left his punishment to the court. They could have, under the law, given him a penitentiary sentence, but the court only gave him a fine and a jail sentence. The court and jury, no doubt, pondered the facts in this case, and saw defendant engaged in the second-hand business in a large city. Saw two young boys, who were strangers to him, enter his place of business, and there display before him 32 different articles taken from suit cases, and of the value of nearly $100, at wholesale prices, and purchase the same for $13. That this property was not all brought in at the same time, but at two different times, and this at the request of defendant. That one of the boys signed his name upon the books of defendant at his request, and that each time he signed was a different name, and that defendant showed him a little card and told him to sign the name "C. Hammond." That defendant did not ask the boys who they were, or where they came from, and made no effort to consult officers of the law when the boys went to get the second part of the goods. The jury evidently considered the testimony of defendant when he said: "It didn't make any difference to me if it was worth a thousand dollars, if I could buy it for ten cents, that is all I wanted." No doubt the jury considered the report made by defendant to the office of the stolen goods department of the police department, and found by that report a great part of the property which was purchased by defendant was not listed in that report, and that they further considered the fact that the "silver platter" and the "knives and forks" were taken to the home of defendant and were not left at his place of business. And the jury, after having considered the above facts, came to the conclusion that it would be well to issue a word of warning to those who deal in the purchase of second-hand goods in Oklahoma City, and the other cities of this state, that a little extra precaution on their part might not only save them from the humiliation and punishment of which defendant speaks, but be of some benefit in the enforcement of the larceny and burglary laws of this state,

which are too often violated in this city and other cities of this state.

It is finally contended that the bailiff of the court was permitted to give to the jury certain books and records after they had retired to deliberate, and that the same had not been introduced in evidence. The record does not bear out this statement. With reference to the introduction in evidence of the report of defendant to the stolen goods department of the police department, and the book which defendant offered where the witness Marion Nasche had signed, the record shows:

"The Court: You can introduce this as an exhibit. Mr. Eberle: We wish to introduce that. Has the book been introduced? Mr. Mathers: Yes."

It will thus be seen that both the book and the statement were introduced in evidence. The record does not have a copy of the statement offered by the state, nor the book offered by the defendant. Yet the record shows that both were introduced in evidence.

On the supplemental motion for new trial, when this question was raised for the first time, the journal entry states: "Comes on for hearing on supplemental motion for new trial. One witness sworn. Evidence introduced. Argument by counsel. Motion for new trial overruled. Exception by defendant." What evidence was taken at the hearing on the motion on the supplemental petition for rehearing is not shown by the record, and the only showing that the jury considered any exhibit was the statement in the motion. The Okla. St. 1931, § 3084, 22 Okla. St. Ann. § 893, is as follows:

"On retiring for deliberation the jury may take with them the written instructions given by the court; the forms of verdict approved by the court, and all papers which have been received as evidence in the cause, except that they shall take copies of such parts of public records or private documents as ought not, in the opinion of the court, to be taken from the person having them in possession."

In construing this statute, this court has held that the permitting of the jury to examine the exhibits is a matter within the sound judicial discretion of the trial court. If there was an abuse of discretion, the burden was upon the defendant to so show. We have no hesitancy in saying that trial courts should be very careful in seeing that the exhibits which are introduced in evidence have been properly admitted in evidence. The record so shows in this case. Keeney v. State, 53 Okla. Cr. 1, 6 P. 2d 833; Brown v. State, 52 Okla. Cr. 307, 4 P. 2d 129.

Under the above statement we do not find any prejudicial error committed in this case, and the judgment of the district court of Oklahoma county is, therefore, affirmed.

DOYLE, P. J., and DAVENPORT, J., concur.