## ANDY COX v. STATE.

No. A-9956.    April 1, 1942.

(124 P. 2d 432.)

Date Crawford and Vol Crawford, both of Ada, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Jess L. Pullen, Asst. Atty. Gen., for defendant in error.

JONES, J. The defendant, Andy Cox, was charged in the district court of Pontotoc county with the crime of receiving stolen property, was tried, convicted and sentenced to serve two years in the State Penitentiary and to pay a fine of $250, and has appealed.

It is contended that the evidence is insufficient to sustain the judgment of conviction and that the verdict of the jury is excessive and the result of passion and prejudice.

The proof of the state shows that the defendant and his brother, Marvin Cox, owned and operated a junk yard at Fittstown. Marvin Cox had left to go to Illinois to work in the oil fields in the spring of 1939 and the junk yard continued in operation by the defendant with the assistance of Bill Cox, the 16-year-old son of Marvin Cox.

In the latter part of September, 1939, several joints of two and one-half inch upset oil well tubing, 30 feet long, were stolen from the Simpson-Roodhouse Drilling Company, which had the pipe stored in Fittstown with the Eureka Tool Company. Fifty-seven joints of this tubing had been stolen about the 25th, 26th and 27th of September, 1939. Later, employees of the company, together with an investigator of the Phillips Petroleum Company, found 22 of the stolen joints at the Cox junk yard and 35 joints at the Moran Supply Company at Seminole. Also discovered at the same time in possession of defendant was some tubing which had been stolen from the Phillips Petroleum Company. The junk yard of defendant was about three blocks from the Eureka Tool Company.

Meyer Moran, owner of the Moran Supply Company, testified that the tubing that he had in his possession, which was identified as a part of that which had been stolen from the Simpson-Roodhouse Drilling Company and the Phillips Petroleum Company, was bought by him from Sidney Sachs, who operated the Ada Iron & Metal Company.

Sidney Sachs testified that he bought the tubing from the defendant. He further testified that he bought a considerable amount of pipe and scrap iron from the Cox junk yard in September, 1939 and identified a statement of his account with Cox showing the various transactions during that month, which disclosed that he bought several hundred feet of two and one-half inch tubing. He further testified that he paid Cox 12 cents a foot for the tubing and received from Moran 17 cents a foot. The testimony showed that the secondhand tubing was reasonably worth 25 cents per foot.

Walter Cooper testified that he and Kenneth Gillespie, an 18-year-old boy who worked in a cafe at Fittstown, had stolen eight joints of Simpson-Roodhouse tubing and sold it to the defendant; that they signed fictitious names to an invoice handed them by Bill Cox; that the tubing was stolen around midnight on September 26, 1939, and he and Gillespie carried the eight joints to the junk yard of the defendant one piece at a time; that they did not see the defendant the night the tubing was delivered, but that they came back the next morning about 10 or 11 o'clock and the defendant, paid them $8 apiece for the eight joints; that he had lived there at Fittstown five or six years and was "pretty well" acquainted with defendant; that he did not tell defendant the pipe was stolen and doesn't know whether defendant knew it was stolen or not; that he had sold some pipe

to the defendant once before. This witness had entered his plea of guilty to stealing the pipe, but had not been sentenced prior to his testifying in this case.

The proof further showed that the defendant did not furnish the sheriff with a record of this purchase of secondhand oil field equipment, as provided by H. B. 413, Session Laws 1935, O. S. 1941, tit. 52, § 375. When the defendant was questioned at the time the stolen pipe was found in his possession, he showed the officers the invoice signed by the youths who had delivered the pipe to him. This invoice had the fictitious names on it with the address given as Jessie, Okla. Defendant told the officers that the boys who sold the pipe lived at Jessie.

For the defense it was contended that the pipe in question was bought by Bill Cox, the 16-year-old son of Marvin Cox, from the youths and that the defendant had nothing to do with the transaction and did not know that the pipe was stolen property. Also, there was introduced, on behalf of the defendant, testimony as to his good reputation. On cross-examination of these witnesses it was disclosed that the defendant had been charged and acquitted on a charge of receiving stolen property about a year previous to this occasion.

It is necessary for the state to show in a case of this character that the goods has been stolen and that the party receiving the stolen property had knowledge at the time the property was received that it had been stolen. By this expression it is not meant that it is necessary for the person receiving the same to have actually seen the theft of the property. It is sufficient if the facts are such as to cause an actual belief that the property was stolen. Price v. State, 9 Okla. Cr. 359, 131 P. 1102; Camp v. State, 66 Okla. Cr. 20, 89 P. 2d 378. Applying this test to the case at bar, we find that the

evidence is sufficient to sustain the verdict. While there is no direct testimony that the defendant knew that the tubing which was purchased was stolen, there are sufficient circumstances to convince any reasonable jury that the defendant did have this knowledge.

The youths from whom the property was purchased were not in the oil field business nor in the junk business. The defendant was acquainted with them, although he denies knowing their true names. His failure to file the statement with the sheriff as required by law, showing the details of his purchase, was a strong circumstance against defendant. The manner of delivery of the pipe in the nighttime and the circumstances surrounding payment when no questions were asked by defendant are all facts which are inconsistent with honesty. His possession of other recently stolen property is also a circumstance to be considered in determining the intent.

In the case of Pierce v. State, 54 Okla. Cr. 118, 15 P. 2d 603, it is stated:

"Where defendant receives stolen property under such circumstances that he must have believed that it was stolen, a conviction for knowingly receiving stolen property will not be reversed for want of evidence."

In Lordi v. State, 47 Okla. Cr. 102, 287 P. 1083, it is stated:

"In a prosecution for receiving stolen property, knowing the same to be stolen, it is not necessary that defendant have actual knowledge that the property was stolen, but it is sufficient, if the circumstances accompanying the transaction were such as to make him believe that it was stolen."

In the case of Goodwin v. State, 68 Okla. Cr. 381, 99 P. 2d 181, 184, it is stated:

"Whether an explanation respecting possession of property recently stolen is reasonable or not, is ordinarily

a question for the jury the same as any other question of fact."

It is further contended that the verdict is excessive. In this connection we find that the county attorney did ask many leading, prompting, and improper questions. To many of these questions, no objections were interposed; to other of the questions, objections were properly interposed and sustained. The county attorney went too far in the questions and statements which he asked, and we cannot place our stamp of approval upon his conduct in this regard. However, the punishment imposed by the jury is not so severe, when the nature of the crime is considered, that this court would be justified in finding that this verdict was the result of passion and prejudice created by the manner in which the county attorney conducted his examination of the witnesses.

Some mention is made in the brief of the defendant concerning the overruling of his motion for a continuance. However, this matter is apparently not seriously argued, for the probable reason that the case-made fails to reflect whether this motion was ever presented, or what disposition was made of the same.

We have carefully considered the whole record; we have no doubt of the sufficiency of the evidence to justify the verdict and have found no error in the record that will warrant this court in disturbing the verdict or in reducing the punishment assessed.

The judgment is affirmed.

BAREFOOT, P. J., and DOYLE, J., concur.