# DOROTHY McGOWAN et al. v. STATE.

No. A-10567.    Sept. 26, 1946.

Opinion on Rehearing Jan. 22, 1947.

(173 P. 2d 227; 176 P. 2d 837.)

Herbert K. Hyde and Lee Williams, both of Oklahoma City, for plaintiffs in error.

Randell S. Cobb. Atty. Gen., E. J. Broaddus, Asst. Atty. Gen., and George Miskovsky, Co. Atty., of Oklahoma City, for defendant in error.

BAREFOOT, J. The defendants, Dorothy Loraine McGowan and Ernest Arthur Hurst, were charged jointly in the court of common pleas of Oklahoma county with the crime of contributing to the delinquency of a minor, were tried, convicted and sentenced to each pay a fine of $500 and serve six months in the county jail, and have appealed.

It is first contended that the evidence was insufficient to sustain the judgment and sentence, under the law.

The statute under which defendants were charged is Tit. 21, O. S. 1941 § 856, and is as follows:

"Every person who shall knowingly or willfully cause, aid, abet or encourage a minor to be, to remain, or to become a delinquent child, as defined herein, shall, for the first offense, be guilty of a misdemeanor and punishable by imprisonment in a county jail not to exceed six (6) months, or by a fine not to exceed Five Hundred Dollars ($500.00), or by both such fine and imprisonment. * * *"

Section 857 of the same Title provides:

"* * * 2. 'Minor' or 'child,' as used in this Act, shall include male or female persons who shall not have arrived at the age of eighteen (18) years at the time of the commission of the offense.

"3. 'Encourage,' as used in this Act, in addition to the usual meaning of the word, shall include a willful and intentional neglect to do that which will directly tend to prevent such act or acts of delinquency on the part of such minor, when the person accused shall have been able to do so.

"4. 'Delinquent child,' as used in this Act, shall include a minor, as herein defined, who shall have been or is violating any penal statute of this State, or who shall have been or is committing any one or more of the following acts, to-wit:

"(a) Associating with thieves, vicious or immoral persons.

"(b) Frequenting a house of ill repute. * * *

"(f) Willfully, lewdly or lasciviously exposing his or her person, or private parts thereof, in any place, public or private, in such manner as to be offensive to decency, or calculated to excite vicious or lewd thoughts, * * *."

The information filed in this case, charges the following:

"* * * That is to say, the said defendant in the county and state aforesaid, and on the day and year aforesaid, then and there being, knowingly and wilfully cause, aid, abet and encourage one Genavee Keener, a female under the age of 18 years, to become a delinquent child, in manner and form as follows, to-wit; that is to say, the said defendants did willfully, lewdly and lasciviously in such manner as to be offensive to decency, and calculated to excite vicious or lewd thoughts to the said Genavee Keener, by enticing the said Genavee Keener to spend the night at

a residence at 22nd and South Eastern in said county and state, where they encouraged the said Genavee Keener to spend the night with one Eskill Marshall, and by taking the said Genavee Keener to various beer taverns, buying her beer, and by themselves having sexual intercourse in her presence, with the wilful and unlawful intent to excite vicious or lewd thoughts in the mind of the said Genavee Keener, contrary," etc.

The record reveals that defendant Ernest Arthur Hurst had at one time worked at the Casaloma Night Club in Oklahoma City, and that he had for some time previous to January 15, 1944, been keeping company with his codefendant, Dorothy Loraine McGowan. That on that date the two defendants, who had previously met Genavee Keener at the Casaloma Night Club, where she had gone with her mother's consent, went to the home of Genavee Keener accompained by one Eskill Marshall, and asked her to accompany them to a night club, —The Midnight Sun. Her mother, after telling the defendant McGowan that Genavee was young and she wanted her to be protected, consented for her to accompany them. The defendant McGowan told Mrs. Keener that she was a married woman, and that she would protect Genavee.

After visiting the night club, the four of them went to a grocery store and got something to eat, and parked the car, which belonged to the defendant McGowan, and listened to the radio. They later proceeded to the home of Mrs. McGowan, and she asked Genavee to spend the night. Genavee called her mother to ask permission, and was first told that she could not stay; but after the defendant McGowan talked to Mrs. Keener over the telephone, told her that she did not have gasoline to take Genavee home, and assured her that the boys were not there, Mrs. Keener gave

her consent for Genavee to stay, cautioning Mrs. McGowan to keep the window shades down. At the very time this conversation over the telephone occurred, both the defendant Ernest Arthur Hurst and Eskill Marshall were present at the McGowan home, and did not at any time leave there, although Hurst made a telephone call to Mrs. Keener, asking the whereabouts of the girls, and leaving the impression that they were not with them. The defendant **Hurst** and Eskill Marshall were rooming together, and working at the same place at this time.

It is further revealed by the record that soon after the telephone call was made from the home of Dorothy McGowan, the defendant Hurst went to bed in the front room, and the defendant Dorothy McGowan slept in the same room with him, both sleeping on the divan, but both deny that any misconduct occurred between them. Eskill Marshall and Genavee Keener went to bed in an adjoining room, slept together and twice had intercourse.

There is some dispute as to the age of Genavee Keener. The testimony of her mother and of Genavee was that she was only 16 years of age at the time. The defendants testified that she told them she was 18, and that she had told other parties she was 18. This was a disputed question of fact for the consideration of the jury.

It is further revealed by the record that the defendants were unmarried at the date of this alleged offense. At the time of their arrest on the charge here, they were living together in a rooming house in Oklahoma City as man and wife, and on the date of the trial they were both living at the same hotel. The defendant McGowan was married, and her husband was in the Navy and overseas. He and the defendant Hurst were friends. Mrs. McGowan testified at the trial that it was her intention to secure a divorce as

soon as her husband returned to the states, and to marry her codefendant. Hurst testified that his wife had secured a divorce, and that he had one small child.

A reading of this record convinces one that the defendants planned from the very beginning to allure this young girl from her home for the purpose of spending the night with Eskill Marshall; and the jury no doubt reached this conclusion. The record abounds with circumstances and deceptions used to bring this about. The testimony of the defendants that they slept together on a divan and no wrong was committed was probably discredited by the jury. Their every act was such as to lead this young girl, Genavee Keener, to commit the acts she testified she did. We do not mean to say by this that she is entirely guiltless, nor that her mother was as careful as she should have been, yet the record discloses that the mother was trying to be careful of the conduct of her young daughter, but it is now common knowledge that the rearing of a young girl in a populous city, crowded with beer taverns, dance halls, and honky tonks, is a troublesome and tremendous responsibility. The mothers and fathers of this age must themselves meet this responsibility for the moral welfare of their children, and the children must develop character strong enough to meet these ever present temptations. Their characters and good sense should prevail over their appetites and desires.

Much stress is placed upon the interpretation of the meaning and exact wording of the statutes defining "delinquent child," above quoted; and it is contended that the evidence did not reveal that defendants had "knowingly" committed the acts charged in the information.

It is stated in defendant's brief that:

"The gist of the charge against defendants as contained in the information consists of three things which it is alleged 'caused, aided, abetted and encouraged' Genavee Keener 'to become a delinquent child,' being

"(a)  by enticing the said Genavee Keener to spend the night at a residence * * * where they encouraged the said Genavee Keener to spend the night with one Eskill Marshall,

"(b)  by taking the said Genavee Keener to various beer taverns, and buying her beer, and

"(c)  by themselves having sexual intercourse in her presence."

These charges should be considered with reference to the statute above quoted, Tit. 21 O. S. 1941 § 856, which defines the crime of contributing to the delinquency of a minor, and fixes the punishment therefor, and section 857 of the same Title which defines the terms used in section 856, and also defines a delinquent child.

Subdivision 3 of section 857 defining the term "encourage" as used in section 856, and subdivision 4 of section 857 defining "delinquent child," have been hereinbefore quoted.

From the evidence above quoted it cannot be doubted that it covers the charge that Genavee Keener was "encouraged" and enticed to associate with "vicious and immoral persons," which is an act of delinquency under the terms of the statute. The testimony of the two defendants themselves establishes that they were vicious and immoral persons when they admitted that they occupied the same room and bed on the night of the alleged offense, and that the door between the room occupied by them and that occupied by Eskill Marshall and Genavee Keener was open and not closed; and admitted that they had lived together as man

and wife at the rooming house up to the time of their arrest. By the terms of the statute, the word "encourage" in addition to the usual meaning of the word, shall include a willful and intentional neglect to do that which will directly tend to prevent such act or acts of delinquency on the part of such minor, when the person accused shall have been able to do so." The evidence here not only shows that the defendants failed to do anything to prevent the minor child from entering the room and occuping the same bed with Eskill Marshall on the night of the offense charged, but that they encouraged it by their acts, conduct and deception. While the evidence may not show directly that the defendants actually committed an act of sexual intercourse in her presence, yet their conduct and the circumstances were such that would cause any person to reach the conclusion that such act was actually committed.

In the case of State v. Johnson (Mo. App.) 146 S. W. 2d 468, the third paragraph of the syllabus is as follows:

"Evidence sustained conviction of contributing to the delinquency of a 14-year old child by soliciting, encouraging and advising her to associate with immoral persons, though the defendants themselves were the immoral persons with whom they caused the child to associate."

Defendant Hurst was asked:

"Q. Did you have sexual intercourse? A. No, sir, I don't guess I did, I was asleep."

The record does not sustain the allegation that defendants purchased beer for Genavee Keener. They went to the beer tavern, but it was closed and they did not go in.

Defendants contend that they did not have personal knowledge that Genavee Keener was not 18 years of age. There is some conflict in the evidence as to this

point. Genavee testified that she told the defendants she was 17. Her mother testified that she told the defendant Dorothy McGowan at the time she gave permission for Genavee to accompany them that Genavee was young and she did not want her out where she should not be, and that defendant, McGowan answered: "I am married and I will take good care of her," and that when she gave her permission for Genavee to spend the night, she told defendant McGowan to be sure the boys were not there. At this very time the boys were there, and stayed there all night, and slept with the girls in adjoining rooms with the door open. There is no evidence that either of the defendants uttered one word of warning to Genavee Keener, but there are many facts and circumstances that they encouraged and approved of her action in sleeping in the same room and bed with Eskill Marshall.

In DeZarn v. Commonwealth, 195 Ky. 686, 243 S. W. 921, 922, the court said:

"The commonwealth did not prove by direct evidence that Sams knew Gregory was not 21 years of age, as no doubt it was unable to do, but it introduced Gregory as a witness, who testified without contradiction that at the time he was only 16 years of age. The jury was thus given the opportunity to judge for themselves whether or not Gregory's appearance was such that Sams must necessarily have known he was a minor. This fact, considered in connection with the uncontradicted proof that Gregory was only 16 years of age at the time, is some evidence at least tending to prove that Sams knew he was a minor, and is doubtless the best, if not the only, evidence that could have been introduced to prove the fact.

"It is urged that it is a matter of common knowledge that many boys 16 years of age have the appearance of being more than 21, but to this we cannot agree, and even if it were true, we certainly do not know judicially that the

appearance of this 16-year old boy whom the jury saw and heard testify was not such as to prove that Sams knew he was under 21 years of age when he permitted him to play on the tables of defendant. Upon the other hand, we feel entirely warranted in assuming, in the absence of evidence to the contrary, that his appearance was such as to prove that Sams must have known, and did know, he was a minor when he permitted him to engage in the game."

We have examined the cases cited in defendants' brief. Most of them are cases involving the sale of intoxicating liquor, or the possession of intoxicating liquor, and the receiving of stolen property. This court in the recent case of Walker v. State, 82 Okla. Cr. 352, 170 P. 2d 261, reviewed the cases with reference to the proof necessary to establish "knowledge" on the part of one who receives stolen property. We quoted at length from the case of Camp v. State, 66 Okla. Cr. 20, 89 P. 2d 378, and think it unnecessary to quote from that case. It gives the general rule adhered to by this court as to the "knowledge" necessary where one is charged with receiving stolen property. The same principle applies to the facts in this case. But as above stated, the definition of the word "encourage" in the statute adds an additional responsibility upon the defendant in a case where the charge is contributing to the delinquency of a minor.

From the above statements, we are of the opinion that the evidence in this case was sufficient to sustain the verdict of the jury, and that the court did not err in refusing to sustain a demurrer to the evidence, or to advise the jury to acquit the defendants.

It is next contended that the court erred in (a) giving certain instructions; and (b) in refusing defendants' requested instruction.

We have examined all of the instructions, including those to which exception was taken by defendants. The instructions to which exceptions were taken were generally definitions of the terms as provided by the statutes. In fact, most of the material instructions consist of these definitions. The instructions as a whole, while not subject to reversible error in our opinion, do not present a comprehensive view of the issues under the evidence submitted. No instruction was given with reference to "associating with vicious or immoral persons", which we have pointed out as a provision of the statute which the evidence in this case clearly supports. The defendants, however, did not offer a requested instruction covering his phase of the case.

The requested instruction offered by defendants, and refused by the court, was as follows:

"You are instructed that one of the essential elements of the crime charged is that the same was committed 'knowingly.' In this connection you are instructed that if the defendants, or either of them, knew that Genavee Keener was a minor, or had such information from her appearance or otherwise as would lead a prudent person to believe that she was a minor, and if followed by inquiry, must bring knowledge of that fact home to him, then the acts charged, if you find they were committed by the defendants, or either of them, would have been committed 'knowingly.' If, on the other hand, the defendants, or either of them, did not know that she was a minor, and had no information from her appearance or otherwise as would lead a prudent person to believe that she was a minor, which, if followed by inquiry, would necessarily have brought knowledge of that fact home to him, then such defendant lacking such knowledge or information could not have 'knowingly' committed the offense charged and it would be your duty to find such defendant not guilty."

No instruction was given by the court with reference to the question of "knowledge." This was a question of fact, as above stated, and the requested instruction fairly presented this issue to the jury for their determination. We have often held that the giving or refusal to give an instruction was not necessarily a cause for reversal of a case; but that the entire record would be examined and determination made as to whether the fundamental rights of the defendant were denied before the case would be reversed. Stroud v. State, 82 Okla. Cr. 124, 167 P. 2d 80; Lamb v. State, 70 Okla. Cr. 236, 105 P. 2d 799; Ned v. State, 29 Okla. Cr. 389, 233 P. 1096.

We have examined this record carefully, and find that the judgment and sentence rendered was the maximum provided by the statute, and we have come to the conclusion that this case should not be reversed, but that from the above statement, justice demands a modification of the sentence imposed of a fine of $500 and six months in jail, to a fine of $100, and thirty (30) days in jail as to each of the defendants.

As so modified, the judgment of the court of common pleas of Oklahoma county is affirmed.

### On Rehearing.

Former opinion set aside, and judgment reversed and case remanded.

Herbert K. Hyde and Lee Williams, both of Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Warren H. Edwards, Co. Atty., of Oklahoma City for defendant in error.

BAREFOOT, P. J. In the original opinion filed herein, the judgment of the court of common pleas of Oklahoma

county was modified from a sentence of $500 and six months in the county jail for each of the defendants, to a fine of $100 and 30 days in the county jail for each defendant.

A petition for rehearing was filed, and has been granted.

Upon reconsideration, we have reached the conclusion that this case should be reversed and remanded for a new trial. The failure of the court to give the requested instruction, which is set out in the original opinion, was error which justifies a retrial of this case.

For the reason above stated, the judgment of the court of common pleas of Oklahoma county is reversed and the case remanded.

JONES and BRETT, JJ., concur.