## MARION MENDENHALL v. UNITED STATES.

No. A-742.    Opinion Filed December 13, 1911.

(119 Pac. 594.)

1. **COURTS—Statehood—Jurisdiction—District Courts.** Under the provisions of the Enabling Act and the Constitution of Oklahoma, the district court of Le Flore county has jurisdiction to try an indictment for the crime of assault with intent to kill, returned by a grand jury of the Central District of the Indian Territory at Poteau, and pending in said court on the admission of Oklahoma as a state, wherein it is charged that said offense had been committed within said district, and the proof is that the offense was committed within what is now Le Flore county.

2. **STATES—Crimes in Indian Territory—Admission of Territory—Prosecution in State—Rights of Accused.** While a defendant, charged with the commission of a crime in the Indian Territory before statehood, whose case was pending on the admission of Oklahoma as a state, is entitled, under the Enabling Act and the Constitution of Oklahoma, to a trial under the laws in force in the Indian Territory, he has no vested right of being prosecuted in accordance with the method of procedure that was in force in that jurisdiction beyond those substantial protections which the law then in force gives to him. The substantial right guaranteed by article 6 of the amendments to the Constitution of the United States, which secures a public trial by an impartial jury of the state and district wherein the crime charged has been committed, is a right to a trial by an impartial jury of 12 men from within such district, or any part thereof.

3. **EVIDENCE — Confrontation—Evidence at Committing Examination.** The testimony of a witness before a committing court, taken, written, and subscribed to in the presence of the defendant and his counsel, upon proper preliminary proof, including the fact that the witness has since died, may be admitted as evidence against the defendant upon his trial, and the admission

of such testimony does not disparage or infringe the constitutional right of the defendant to be confronted with the witnesses against him.

(Syllabus by the Court.)

*Appeal from District Court, Le Flore County; Malcolm E. Rosser, Judge.*

Marion Mendenhall was convicted of assault with intent to kill, and appeals. Affirmed.

*R. P. White* and *Tom W. Neal,* for plaintiff in error.

*Chas. West,* Atty. Gen., and *Smith C. Matson,* Asst. Atty. Gen., for the State.

DOYLE, J. The plaintiff in error· was convicted in the district court of Le Flore county of the crime of assault with intent to kill, and on November 5, 1909, in accordance with the verdict of the jury, was sentenced to serve a term of one year and one day in the state penitentiary, and he appeals from the judgment of conviction and order denying a new trial.

The record in this case shows that this conviction was had on an indictment returned by a grand jury in the United States Court in the Indian Territory for the Central District of said territory at the April term, 1907, at Poteau; and that the case was pending in said court at the time of the admission of Oklahoma as a state.

The proof on the part of the prosecution tended to show that Pete Wise, city marshal of Howe, and the defendant had a dispute over the collection of a license tax, and the defendant shot at Wise, which shot was followed by a fusilade; seven or eight shots being fired by both parties. The marshal was uninjured, and the defendant was wounded in the hand. The defense was that Wise was the aggressor, and that the defendant shot in self-defense.

The first assignment of error is:

"That the court erred in overruling the demurrer of the defendant to the jurisdiction of the court to try said cause."

The defendant's counsel contend that he had the right, under the Constitution of the United States, having been indicted by the courts of the United States, to a trial by the courts of that sovereignty. The question has been decided contrary to this contention by the Supreme Court and this court. *Higgins v. Brown,* 1 Okla. Cr. 33, 94 Pac. 703; *Ex parte Ellis,* 1 Okla. Cr. 125, 94 Pac. 556; *Ex parte Curlee,* 1 Okla. Cr. 145, 95 Pac. 414.

The second assignment is:

"That the court erred in overruling the challenge to the panel of jurors summoned to try said cause."

The record shows that after the jury was impaneled the following challenge was interposed:

"The defendant objects to the entire panel of jurors, because they were drawn, chosen, and selected from the body of Le Flore county, and not from the body of the Central Judicial District of the Indian Territory."

This objection was properly overruled.

While a defendant, charged with the commission of a crime in the Indian Territory before statehood, whose case was pending at the time Oklahoma was admitted as a state, is entitled, under the provisions of the Enabling Act and the Constitution of Oklahoma (Enabling Act, June 16, 1906, c. 3335, § 20, 34 Stat. 267, as amended Act March 4, 1907, c. 2911, § 3, 34 Stat. 1287, Schedule, Const.), to be tried by the laws in force in the Indian Territory, he has no vested rights of being prosecuted in accordance with the method of procedure that was in force in that jurisdiction beyond those substantial protections which the law then in force gives to him. The right guaranteed to the defendant is based upon article 6 of the amendments of the Constitution of the United States, which prescribes that:

"In all criminal prosecutions the accused shall enjoy the right to a speedy and public trial by an impartial jury of the state and district wherein the crime charged has been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him."

The substantial right guaranteed to the defendant was a right to a trial by an impartial jury of 12 men from within such district, or any part thereof. Le Flore county is wholly within what was formerly the Central district of the Indian Territory. It does not appear that any difficulty was experienced in securing an impartial jury, as the record does not disclose that the defendant used any of his peremptory challenges. It is evident that the situation of the defendant was not altered to his disadvantage.

For the reasons herein stated, the case of *Sharp v. State,* 3 Okla. Cr. 24, 104 Pac. 71, is hereby modified to conform herewith.

The third assignment is:

"That the court erred in permitting the statements of John Slusher, taken before the United States Commissioner, to be read in evidence."

The record shows that on the preliminary examination John Slusher was a witness, and his testimony was reduced to writing and signed by him. Proof was offered, and it was conceded that this witness was dead. There was no error in admitting this testimony.

The provisions of the federal Constitution apply to criminal prosecutions in the territories. The Supreme Court of the United States passed directly upon this question in the case of *Mattox v. United States,* 156 U. S. 137, 15 Sup. Ct. 237, 39 L. Ed. 409. Mr. Justice Brown, delivering the opinion of the court, after fully reviewing the authorities, used the following language:

"The primary object of the constitutional provision in question was to prevent depositions or *ex parte* affidavits, such as were sometimes admitted in civil cases, being used against the prisoner, in lieu of a personal examination and cross-examination of the witness, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury, in order that they may look at him, and judge, by his demeanor upon the stand and the manner in which he gives his testimony, whether he is worthy of belief. There is doubtless reason for saying that the accused should never lose the benefit of any of these safeguards, even by the death of the

witness; and that, if notes of his testimony are permitted to be read. he is deprived of the advantage of that personal presence of the witness before the jury which the law has designed for his protection. But general rules of law of this kind, however beneficent in their operation and valuable to the accused, must occasionally give way to considerations of public policy and the necessities of the case. To say that a criminal after having once been convicted by the testimony of a certain witness, should go scot-free, simply because death has closed the mouth of that witness, would be carrying his constitutional protection to an unwarrantable extent. The law in its wisdom declares that the rights of the public shall not be wholly sacrificed, in order that an incidental benefit may be preserved to the accused.

"We are bound to interpret the Constitution in the light of the law as it existed at the time it was adopted, not as reaching out for new guaranties of the rights of the citizen, but as securing to every individual such as he already possessed as a British subject—such as his ancestors have inherited and defended since the days of Magna Charta. Many of its provisions in the nature of a bill of rights are subject to exceptions, recognized long before the adoption of the Constitution, and not interfering at all with its spirit. Such exceptions were obviously intended to be respected. A technical adherence to the letter of a constitutional provision may occasionally be carried further than is necessary to the just protection of the accused, and further than the safety of the public will warrant. For instance, there could be nothing more directly contrary to the letter of the provision in question than the admission of dying declarations. They are rarely made in the presence of the accused; they are made without any opportunity for examination or cross-examination; nor is the witness brought face to face with the jury; yet from time immemorial they have been treated as competent testimony, and no one would have the hardihood at this day to question their admissibility. They are admitted, not in conformity with any general rule regarding the admission of testimony, but as an exception to such rules, simply from the necessities of the case, and to prevent a manifest failure of justice. As was said by the Chief Justice when this case was here upon the first writ of error (146 U. S. 140, 152 [13 Sup. Ct. 50, 36 L. Ed. 927]), the sense of impending death is presumed to remove all temptation to falsehood, and to enforce as strict an adherence to the truth as would the obligation of an oath. If such declarations are admitted, because made by a person then dead, under circum-

stances which give his statement the same weight as if made under oath, there is equal, if not greater, reason for admitting testimony of his statements which were made under oath.

"The substance of the constitutional protection is preserved to the prisoner in the advantage he has once had of seeing the witness face to face, and of subjecting him to the ordeal of a cross-examination. This, the law says, he shall under no circumstances be deprived of, and many of the very cases which hold testimony such as this to be admissible also holds that, not the substance of his testimony, only, but the very words of the witness, shall be proven. We do not wish to be understood as expressing an opinion upon this point, but all the authorities hold that a copy of the stenographic report of his entire former testimony, supported by the oath of the stenographer that it is a correct transcript of his notes and of the testimony of the deceased witness, such as was produced in this case, is competent evidence of what he said."

We are of opinion that the admission of the testimony of the deceased witness did not disparage or infringe the defendant's constitutional right to be confronted with the witness against him. See, also, *Hawkins v. U. S.,* 3 Okla. Cr. 651, 108 Pac. 561, and *Warren v. State, infra,* 115 Pac. 812.

In conclusion, it is complained that the record does not show that the defendant was present in court at the time the motions for new trial and in arrest of judgment were ruled upon. We are of the opinion that this contention is not well founded. The record recites that the defendant appeared and filed his motion for a new trial on the same day that the motion in arrest of judgment was filed, and that the defendant excepted to the orders of the court, overruling said motions. The record further recites that immediately upon the overruling of the motion for a new trial the court pronounced judgment and sentence, and that the defendant excepted thereto. Thus the record sufficiently shows the presence of the defendant.

Upon a careful consideration of the case, we discern no error prejudicial to the substantial rights of the defendant. Wherefore the judgment of the district court of Le Flore county is affirmed.

FURMAN, P. J., and ARMSTRONG, J., concur.