L. L. STINE v. STATE.

No. A-6308. Opinion Filed May 11, 1929.

(277 Pac. 598.)

E. W. Snoddy, for plaintiff in error.

Edwin Dabney, Atty. Gen., for the State.

DAVENPORT, J.   The plaintiff in error, hereinafter called the defendant, was indicted in the district court of Alfalfa county, Oklahoma; the charging part of the indictment being as follows: "That one J. C. McClure and one Ben Rackley and one L. L. Stine in the county of Alfalfa, State of Oklahoma, on or about the 8th day of September, in the year of our Lord One Thousand Nine Hundred and twenty-four and anterior to the presentment hereof, did commit the crime of receiving a deposit in an insolvent bank, in the manner and form as follows, to-wit:   That is to say that said defendant, J. C. McClure, being then and there the President, director and active managing officer of the bank of Ingersoll, and the defendant Ben Rackley, being then and there the Cashier, director and active managing officer of the Bank of Ingersoll, and the said L. L. Stine, being then and there a member and managing party of said Bank of Ingersoll, and the Bank of Ingersoll being then and there a banking corporation, organized and existing under and by virtue of the laws of the State of Oklahoma, and engaged in transacting a general banking busi-

ness at Ingersoll, Alfalfa County, Oklahoma, did then and there unlawfully, willfully and feloniously receive and accept a deposit in said bank and were accessory to, and did permit and connive at the receiving and accepting on deposit in said bank, the sum of $3000 in money bank bills, bank notes, United States Treasury Notes, gold certificates, silver certificates, currency, checks, drafts of the value of $3,000 the personal property of one Sophia Smith when said bank was then and there insolvent; and the said defendants, and each of them then and there knew said bank was insolvent, contrary to the form of the Statute in such case made and provided, and against the peace and dignity of the State of Oklahoma."

A severance was had and the parties tried separately. The defendant, L. L. Stine, was convicted and sentenced to pay a fine of $1,000. Motion for new trial was filed and overruled, and the case appealed to this court.

The record in this case is voluminous, containing more than 1,400 pages, most of which are exhibits and statements of the condition of the Bank of Ingersoll, and to the actions of the other defendants in the management and conducting the bank.

When the case was called for trial the defendant demurred to the indictment on the grounds: First, that said indictment does not substantially conform to the requirements of chapter 7, art. 8, of the Compiled Statutes of Oklahoma 1921; second, that more than one offense is charged in the indictment; third, that the facts stated therein do not constitute a public offense. The demurrer was overruled, and defendant saved an exception. From an examination of the indictment we hold that it properly charges an offense, and the demurrer of the defendant was properly overruled.

The evidence on behalf of the state shows that J. C. McClure was president of the Bank of Ingersoll; that Ben Rackley was cashier; the Bank of Ingersoll was organized in 1901 by J. A. Stine, G. E. Nichols, and L. L. Stine; at the time the bank was organized J. A. Stine was president of the First National Bank of Alva, and this defendant was cashier of the First National Bank of Woodward, Oklahoma, and occupied that position up until 1917, and at the death of his father the defendant became president of the First National Bank of Woodward. Ingersoll is a small town, and the record shows that from the time of the organization of the bank it was never actively managed by the defendant or his father; at the death of his father the stock owned by his father was divided between the defendant and his sister and her husband. The record further shows that the defendant was never actively engaged in the management of the Bank of Ingersoll; that he devoted all his time to the First National Bank of Woodward; took no part in the management of the affairs of the Bank of Ingersoll; that for some time he was carried as vice president of the bank. Defendant filed his resignation as vice president of the Bank of Ingersoll, and the same was accepted.

The record further shows that at the annual meeting in January, 1923 and 1924, that J. C. McClure was elected president; L. P. McClure, vice president; and Ben Rackley, cashier. It further appears that, after the resignation of L. L. Stine, J. C. McClure, in making his reports to the bank commissioners, would write the name of L. L. Stine as vice president on the bottom of the reports with the typewriter.

The record further shows that on or about the 18th day of July, 1924, the defendant in this case sold all the stock he owned in the Bank of Ingersoll to J. C. McClure,

after which sale he had no occasion to go to Ingersoll to visit the bank or to examine its books; that L. L. Stine was not acquainted with the customers of the Bank of Ingersoll; and that the only information he had with reference to the bank was what he had received from its president, J. C. McClure.

The record further shows that about the 7th of September, 1924, the bank examiner for the State of Oklahoma, who had been examining the Bank of Ingersoll on the 3rd, 4th and 5th of September, called the defendant and advised him that he must come to Ingersoll and have transferred back to the defendant the stock he had sold to Mr. McClure; that bank examiner insisted that defendant had no authority to sell the stock. The record discloses that defendant went to Ingersoll and met the bank examiner, and was advised of the financial condition of the bank by the bank examiner, who insisted that defendant must have transferred back to him the stock he sold McClure in July; that the bank examiner insisted that, because he did not approve the sale of the stock of defendant to J. C. McClure, the sale was not valid.

The testimony further shows that, while the defendant was at the bank going over the matter with the bank examiner and McClure, a customer came into the bank and wanted to withdraw the deposit she had in the bank; that Mr. McClure introduced her to the defendant and told her that defendant was one of the richest men in the state; McClure told defendant that Mrs. Smith wanted to take her money out; that defendant replied, "I don't know as to that but the bank is all right." Mrs. Smith was a customer of the bank and had carried a deposit with the bank for some time; that McClure stated to defendant that Mrs. Smith wanted to take her money out, that she was afraid of the bank; Mrs. Smith testified that the

money had been left in the bank for her by an agent of a party to whom she had sold some real estate; she states that $2,000 of the money had been in the hands of the bank for some time, and the $1,000 was left the day she talked about taking her money out; she had in the bank in addition to the $3,000, $1,300 on deposit. The record shows that the conversation had with McClure, in the presence of the defendant and depositor, Mrs. Smith, was had after the money had been received by the bank through its president, McClure, and that the conversation was with reference to her withdrawing the money from the bank and not with reference to depositing it in the bank.

The testimony of W. N. Craig, who was handling the trade on the land for Mrs. Smith, shows that the $2,000 left on deposit was left in escrow on August 22, and that the check for the $1,000 was left with Mr. McClure with instructions to place it to Mrs. Smith's credit the same day, but prior to the alleged conversation with Mrs. Smith.

The record further discloses that the First National Bank of Woodward was a correspondent of the Bank of Ingersoll, and that, after the sale of defendant's stock to McClure in July, 1924, the Bank of Ingersoll increased its indebtedness to the First National Bank of Woodward.

The defendant in his own behalf testified that he had been engaged in the banking business at Woodward for 33 years; he was first cashier, and after the death of his father he was elected president; that he had known John McClure ever since he started with the Bank of Ingersoll. Defendant stated that when his father organized the Bank of Ingersoll he took stock in the bank; that his father died in March, 1917; that he inherited one-half of his father's property, and his sister, Mrs. Nichol the other one-half; "my sister and her husband sold their stock in

the Bank of Ingersoll some time before I did; I paid no attention to the Bank of Ingersoll; I seen on the letter-head my name printed up there as L. L. Stine, Vice President; I knew I had never been an officer in the bank other than a director of the bank while my father was in it, and I immediately wrote Mr. McClure or talked with him and asked him about it. I never did attend a stockholders' meeting of the bank. The First National Bank of Woodward has a capital of $50,000 and surplus of $10,000; it has about 21 correspondents; Mr. McClure advised me another party had been elected vice president in my place; that his wife L. P. McClure had been elected." The record shows by the minutes of the meeting of the bank on January 2, 1924, the directors elected for the ensuing year were J. C. McClure, L. P. McClure, and Ben Rackley. The record also shows that on January 2, 1924, J. C. McClure was elected president, L. P. McClure vice president, and Ben Rackley cashier, of the Bank of Ingersoll.

This is in substance all of the testimony that we deem necessary to refer to for the purpose of arriving at a decision in this case.

The defendant has assigned several errors alleged to have been committed by the court in the trial of this case. Defendant urges that the court erred in overruling his motion for a new trial and rendering judgment against him. The court erred in not sustaining the demurrer to the evidence offered by the defendant at the close of the state's case. The court erred in overruling his demurrer to the evidence at the close of the case.

The question to be determined in this case is, Was the defendant at the time of the alleged deposit occupying any position with the bank described by the statute making it a penalty to receive a deposit knowing the bank to

be insolvent? The indictment charges him with being a member and managing party of the said Bank of Ingersoll at the time the deposit was received. An effort was made by the state to show that the defendant was the vice president of the bank at the time of the alleged deposit, but the record conclusively shows the election of L. P. McClure as vice president at the annual meeting in January, 1924, prior to the failure of the bank in September, 1924. The record further shows that the defendant had sold J. C. McClure his 69 shares of stock in the bank in July, 1924, several weeks before the date of the alleged deposit in the bank. It was contended by one of the examiners of the banking department of the state that the sale of the stock of the defendant was not completed, for the reason the bank commission had not approved the same.

Sections 4151 and 5318, C. O. S. 1921, provide that shares of stock in a state bank are personal property and may be transferred by assignment, and the method of the transfer of the certificates of stock.

Section 4177, C. O. S. 1921, provides:

"Any shareholder who shall sell, assign, or in any manner dispose of his shares of stock, shall, in the event of the insolvency of such corporation, continue to be liable thereon jointly with the owner thereof, to the extent of the liability of such owner, for a period of one year from the date of the transfer of such shares upon the books of such corporation, or until the Bank has been examined and the sale approved by the State Bank Commissioner."

Section 4177, supra, relates to the civil liability of the stockholder who sells stock in a bank, jointly with the party to whom the stock is sold, for a period of one year from the date of the transaction, or until the bank has been examined and the sale approved by the state bank

commissioner, but there is no requirement in the section quoted that the sale to be valid shall be approved by the bank commissioner. The only benefit given the party selling shares of stock by the approval of the bank commissioner is that it relieves him from further civil liability from the date of the approval by the bank commissioner, if made before the expiration of a year after the stock is sold. We hold that under the statutes of this state bank stock may be sold or transferred without the approval of the bank commissioner, and when a sale is made and the stock sold the owner of the stock is relieved from any further criminal liability in connection with the managing and operating of the bank from the date of sale.

It is urged by the state that the defendant aided and abetted in the receiving and securing the deposit by his remark in the presence of Mrs. Smith at the time she was discussing with J. C. McClure the question of withdrawing her deposit from the bank.

The record shows that the defendant was called by the state bank examiner to meet him in Ingersoll and go over the bank's financial condition; that at the time of the meeting the bank examiner and the defendant had been in consultation, and the examiner was insisting that J. C. McClure resell defendant's stock back to him, and urging that the sale was not valid. The record further shows that the defendant was president of the First National Bank of Woodward, and that the First National Bank of Woodward was a creditor of the Bank of Ingersoll and had, increased its credit to the Bank of Ingersoll after the defendant had sold his stock to McClure in July, prior to the failure of the bank in September. All of the testimony shows that the defendant had nothing to do with the management of the bank or its operation for several years;

that he was not elected an officer of the bank for more than two years prior to the date of its failure.

The record does show by witness Constant that, when the bank made reports to the state bank commission, the name of the defendant was written on the bottom of the reports as the vice president; that the defendant was not the vice president at the time the bank failed is successfully shown by the minutes of the annual meeting of the bank showing the election of directors and of the officers of the bank.

It is further urged by the state that the defendant by his action in going to the front of the bank when Mrs. Smith and J. C. McClure were discussing the question of her deposit, and the statements he there made, was sufficient to show he was aiding and abetting the officers of the bank in securing the deposit.

After a careful examination of the record, we hold the testimony in this case is not sufficient to sustain the charge against this defendant; that the demurrer of the defendant to the state's evidence was well taken and should have been sustained.

There are many other errors urged by the defendant in this case to the admission of the testimony, records, and exhibits, but the view we take of this record we do not deem it necessary to consider them. There being no substantial testimony to sustain the conviction, the case is reversed and remanded.

EDWARDS, P. J., and CHAPPELL, J., concur.