### ROY HOLLEMAN v. STATE.

No. A-9948. April 23, 1942.

(125 P. 2d 239.)

Hubert Hargrave, of Wewoka, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and J. Walker Field, Asst. Atty. Gen., for defendant in error.

JONES, J. The defendant, Roy Holleman, was charged in the district court of Pottawatomie county with the crime of burglary in the second degree, was tried, convicted and sentenced to serve five years in the State Penitentiary, and has appealed to this court.

It is first argued that the court erred in overruling the demurrer of the defendant to the information.

The charging part of the information reads as follows:

"* * * did then and there unlawfully, knowingly, wilfully, feloniously, intentionally and wrongfully and burglariously, in the night time of said day, break into and enter a certain Tool House, located in Section 15, Township 7 North, Range 4 East in Pottawatomie County, Oklahoma, by forcibly opening an outer door thereof and entering therein, which said Tool House was then and there owned and controlled by J. E. Crosby Company, and in which said Tool House there was had and kept at said time certain personal property, the same being

the personal property of J. E. Crosby Company, and that said breaking and entering therein by the said Roy Holleman was with the felonious intent and purpose then and there on the part of him the said Roy Holleman to take, steal and carry away said personal property so had and kept aforesaid, against the will and without the consent of the owner thereof, contrary to the statute in such case made and provided, and against the peace and dignity of the state."

It is the contention of the defendant that the information does not describe the tool house and its location with that degree of certainty which is necessary to inform the defendant as to the particular tool house which he is charged with entering. The cases cited by counsel for defendant in support of this contention involve descriptions which are not nearly so specific and definite as the above description. In Presnell v. State, 65 Okla. Cr. 285, 85 P. 2d 441, cited by defendant, the designation in the information was as follows:

"* * * a certain building to-wit: a tool house belonging to the Carter Oil Co., * * *."

In holding that the description was indefinite this court stated:

"* * * the information does not attempt to define the location of the building by describing the township, section or range in said Payne county, on which said building was located * * *."

By inference, it would seem that the court in that case was indicating that if the building had been located by reference to a particular section, township and range in the county, the same would have been sufficient. Nowhere in any of the evidence is it developed that there were any other tool houses in the section named in the information.

It is also contended that the information is defective in that it does not allege that the property was taken by the defendant with the intent to appropriate the same to his own use and benefit, citing Sullivan v. State, 7 Okla. Cr. 307, 123 P. 569. In the Sullivan Case this court said:

"In an indictment or information charging burglary, based upon the unlawful breaking and entering of a railroad car with intent to steal therein, it is necessary for the allegation of intent to set out the acts required to constitute the crime of stealing at common law."

" 'Steal,' as the word is used in the burglary statute (section 2554, Comp. Laws 1909, 21 O. S. 1941 § 1435), is an offense of such character that it is burglary to break and enter with intent to steal, without regard to the value of the property sought to be taken."

In the body of the opinion it is stated:

"Stealing at common law required that the property should be taken with intent to deprive the owner thereof, and to appropriate it to the use of the taker."

The statute under which the defendant was charged provides:

"Every person who breaks and enters any building or any part of any building, room, booth, tent, railroad car, automobile, truck, trailer, vessel or other structure or erection in which any property is kept, with intent to steal therein or to commit any felony, is guilty of burglary in the second degree." Section 1931, O. S. 1931; 21 O. S. 1941 § 1435.

This court has long adhered to the rule that in construing an information or indictment, it is not necessary to use the exact words set forth in the statute to define a public offense, but that other words conveying the same meaning may be used. That when the act or omission charged as the offense is clearly and distinctly set forth in ordinary and concise language, without repetition, and

in such a manner as to enable a person of common understanding to know what is intended, the same is sufficient. Bowes v. State, 8 Okla. Cr. 277, 127 P. 883; Price v. State, 9 Okla. Cr. 359, 131 P. 1102; Armour v. State, 72 Okla. Cr. 44, 112 P. 2d 1116; Star v. State, 9 Okla. Cr. 210, 131 P. 542; Stine v. State, 43 Okla. Cr. 76, 277 P. 598.

Section 2892, O. S. 1931, 22 O. S. 1941 § 410, provides:

"No indictment or information is insufficient, nor can the trial, judgment, or other proceedings thereon be affected, by reason of a defect or imperfection in the matter of form which does not tend to the prejudice of the substantial rights of the defendant upon the merits."

The defendant has not pointed out in his brief nor argument a single particular in which he was prejudiced by the allegations of the information herein. We think the reasoning of Judge Furman in disposing of a similar contention in Price v. State, supra [9 Okla. Cr. 359, 131 P. 1104], is applicable herein. It was there stated:

"Under the old common-law doctrine of strictly construing criminal law and all proceedings in criminal cases, and that an indictment or information should be certain to a certain intent in every particular, the objection now urged to this information would undoubtedly be good. But these doctrines have long since been repudiated in the state of Oklahoma. It is true that an indictment should be reasonably certain as to the offense charged in order that the defendant may not be surprised and may be able to prepare to make his defense, and also to enable him to plead a judgment of acquittal or conviction in bar to a subsequent prosecution for the same offense. This is all that a defendant is in reason and justice entitled to. If an indictment is couched in such language as to enable a person of common understanding to know what is intended, it is all that the law requires."

As will be hereinafter pointed out in a review of the evidence, the proof of guilt of the defendant was clearly established and no evidence was offered in his behalf. If we were to sustain the objections made by counsel for defendant to this information, we would attach more importance to theories which are merely shadows than to substance and would elevate forms and ceremonies above justice. While we would not recommend the information in this case as a model to be followed by other county attorneys in prosecutions for burglary, we are of the opinion that when measured by the rules of law hereinabove set forth, the court did not err in overruling the demurrer to the information.

It is next argued that the court erred in permitting the witness Louis Bennett to testify when his name was not endorsed on the information, which was done over the objection and exception of the defendant. The record discloses that counsel for defendant objected to the testimony of each witness as he appeared on the witness stand for the reason that the name of the witness was not endorsed on the information. There is no dispute but what the names and addresses of every witness used by the state with the exception of Bennett were correctly endorsed on the information. On the information there is endorsed as a witness the name "Louis Barnett (Mid-West Iron Metal Co., Seminole, Okla.)." The witness Louis Bennett testified that he was employed by the Mid-West Iron & Metal Company at Seminole and that the defendant sold to that company a part of the property which was later identified as property stolen from the J. E. Crosby Company. His testimony was mostly cumulative.

It is apparent that the witness Louis Bennett is the same person as the witness Louis Barnett who was en-

dorsed on the information with his correct address. It is clearly a typographical error upon the part of the person who prepared the information. At the time this witness appeared, counsel for defendant merely made the same formal objection which he had made to the testimony of other witnesses for the state as hereinabove mentioned. There was no statement made that the defendant was surprised, nor was a continuance asked for the purpose of meeting the testimony of this witness. There is no claim made now that defendant was surprised, or that he did not know that the witness Louis Bennett was the identical person whose name appears as Louis Barnett, an employee of Mid-West Iron & Metal Company, on the back of the information. There is no showing of injury to the defendant, but he relies upon the technical proposition of law that a witness should not be allowed to testify whose name is not correctly spelled on the information, even though his correct address is given.

This objection was a matter addressed to the sound discretion of the trial court, and, under the record, we cannot say that the court abused its discretion in this instance.

The next assignment of error is that the evidence is insufficient to support a verdict of guilty.

The state used five witnesses. The proof showed that a warehouse of the J. E. Crosby Company, situated in the section set forth in the information, was entered in the nighttime of January 17, 1940. The entry was effected by prying a door open and entering the building. A large quantity of babbitt, metal guide stems and other property was stolen from the warehouse. The proof further showed that the next morning the defendant sold some of the stolen property to the Mid-West Iron & Metal Company at Seminole, and signed his name to the record

of purchases kept by the company as Roy Harper. The stolen property was transported to the Iron & Metal Company in the defendant's automobile and the license number of the automobile was recorded on the report of the transaction which was made by t h e company t o t h e sheriff's office in accordance with the law regarding the purchase of used oil field equipment. H. B. 413, Session Laws 1935, c. 59, art. 7, § 5, 52 O. S. 1941, § 375. Officers were notified of the burglary and after the report of purchase of babbitt was made by the Mid-West Iron & Metal Company an investigation was made and the babbitt in their possession was identified as a part of that stolen from the J. E. Crosby Company. A check of the license number of the automobile which was endorsed upon the report showed that it belonged to the defendant, and the officers went to his house with the superintendent of the J. E. Crosby Company and there found hidden in the yard 18 of the guide stems stolen from the warehouse in the burglary on January 17, 1940. The defendant, in a conversation with the officers, admitted selling the property to the Mid-West Iron & Metal Company and stated he had "picked it up around the field," and further stated he might have known he "would have gotten in trouble dealing with those Jews."

This evidence conclusively establishes that a burglary was committed. The possession and asportation of the property taken in the burglary, by the defendant, the next morning after the burglary was committed and his incriminating statements are sufficient, in the absence of any proof or explanation on his behalf, to sustain the conviction.

It is next contended that the court erred in the giving of instruction No. 6. This instruction was as follows:

"You are instructed that under the law of the State of Oklahoma the possession of property recently stolen,

standing alone is insufficient to sustain a conviction for the crime of burglary. However, you are instructed that, if you find and believe from the evidence in this case beyond a reasonable doubt that the defendant had possession of the property recently stolen, you may consider that fact in connection with statements made by the defendant, if any, relating to the possession or disposition of said property, and if from all the facts and circumstances in evidence you are satisfied beyond a reasonable doubt that the defendant is the one who stole the property in question, your verdict should be guilty, as charged in the information.

"On the other hand, if you fail to so find or entertain a reasonable doubt as to whether the defendant stole the property in question, as charged in the information, you should find the defendant not guilty."

The complaint of the defendant is directed to the latter part of the instruction in which the word "stole" is used, and it is insisted that that part of the instruction authorized the jury to convict the defendant if he had committed larceny but not burglary, and is simply a larceny instruction and misleading to the jury.

In determining whether an instruction is erroneous, attention must be directed to all of the instructions which were given. If this instruction were standing alone and there had been no other information given to the jury defining the elements of the crime of burglary, there would have been much merit to the argument presented by counsel for defendant. However, in instructions 5 and 7, which just preceded and followed the instruction in question, the court clearly defined the elements of burglary and instructed the jury that the burden was upon the state to prove to their satisfaction beyond a reasonable doubt that the defendant did commit the actual burglary, as defined in the instruction, before a verdict of guilty should be assessed. The court, in instruction No.

6, used the word "stole" solely for the purpose of defining the weight to be given to the possession of recently stolen personal property. It was used only in this sense. Under a different set of facts from that which was proved, this instruction might be clearly erroneous, and we certainly do not approve the same as a model. Here, however, no dispute arises as to whether the crime which was committed was larceny or burglary. It is undisputed that the building from which the property was taken was broken into in the nighttime by prying open a door and entering therein. No effort was made on cross-examination to show that the crime might have been larceny instead of burglary. Under the undisputed proof, whoever stole the property was guilty of burglary, as a breaking and entry was effected before the property could be taken.

It has been held that although an instruction may not have been technically correct, yet if the evidence is of such a character that the defendant could not have been injured thereby, the error will not authorize a reversal of the judgment. Johns v. State, 8 Okla. Cr. 585, 129 P. 451; Dooling et al. v. State, 3 Okla. Cr. 491, 106 P. 982; Tritthart v. State, 35 Okla. Cr. 41, 247 P. 1111.

In Dooling et al. v. State, supra, it is stated:

"An instruction improper and contrary to the settled doctrine of this court will not be held reversible error where it is manifest, on consideration of all the instructions given, the testimony of the accused, and the verdict of the jury, that such an instruction did not work to the prejudice of the accused, or deprive him of any substantial right."

"The instructions must be considered in connection with, and applied to, the evidence in the case in which they are given. An instruction harmless in one case may be prejudicial in another, depending upon the facts of each case."

The next two assignments of error will be considered together. It is argued that error was committed when the witness Bob Short, in testifying concerning a conversation had with the defendant, brought out the fact that defendant had been sent to the penitentiary; that such a statement was improper since the character or reputation of the defendant had not been put in issue. It is further argued that the assistant county attorney, in his closing argument to the jury, made prejudicial and improper statements which prejudiced the defendant and that his statements, when considered together with the voluntary statement of the witness that the defendant had been sent to the penitentiary, denied to the defendant a fair and impartial trial and is reversible error.

As to the testimony of the witness Bob Short, the record discloses the following question and answer:

"Q. (By Mr. Edwards, Asst. County Attorney) What did he say to you with reference to who he was? A. He told me I should know him, because he went to the penitentiary from Wewoka, and * * * ." (Objection by defendant.)

It is the contention of defendant that the only reason the question was asked by the assistant county attorney was that he had surmised the defendant did not intend to take the witness stand and was for the purpose of informing the jury that the defendant was an ex-convict.

After the question and answer had been given, objection made and sustained, the court admonished the jury not to consider the statement of the witness. Later in his instructions he again instructed them not to give consideration to statements which were stricken from their consideration.

The witness is a former president of the Sheriff and Peace Officers Association of Oklahoma. He is an ex-

cellent officer and well known to this court. His testimony in this case as to the questions asked defendant, and his method of handling the defendant when he was arrested, show that he is thoroughly familiar with the rules of criminal procedure, and we are convinced that he knew that the statement he made was improper, since the reputation of the accused had not been put in issue nor had the defendant offered himself as a witness. This officer, in his many years of experience, had no doubt learned that a jury will be greatly influenced by information that a defendant has served a term in the State Penitentiary. A county attorney knows that he could not ask a direct question concerning this evidence, and though it might not have been deliberately done in this case, too often we see instances where questions have been deliberately framed in order to give a witness opportunity to make a voluntary statement concerning some evidence which is not competent and which should not be introduced. In Porter v. State, 8 Okla. Cr. 64, 126 P. 699, it is stated:

"Where the character or reputation of the accused is not an element of the crime charged, the prosecution cannot put it in issue by offering evidence of his bad character, unless the defendant first offers evidence of his good character. The prosecution may then rebut it by evidence of bad character."

In Thompson v. State, 6 Okla. Cr. 50, 117 P. 216, this court said:

"Where a witness voluntarily states a matter which should not be introduced in evidence, and the court promptly excludes the testimony given by the witness and instructs the jury not to consider it in their deliberations, such voluntary testimony of the witness, although improper, will not ordinarily be ground for the reversal of a conviction."

The argument complained of as improper was the statement by the assistant county attorney as follows: "These thieves didn't want to carry this stuff very far * * *."

Proper objection and exception was interposed at the time the statement was made. Later the assistant county attorney made the remark: "I think there is more than one in it, and I think this defendant is guilty * * *."

To which statement the court gave the following admonition:

"The court will give this admonition to the jury: Counsel is entitled to draw deductions from the evidence; counsel on either side is not permitted to say, 'I think the man is guilty,' or, 'I think the man is not guilty;' they may make the statement, 'I think the evidence shows the man is guilty,' or 'the evidence shows the man is not guilty;' but to make the statement on the part of either party the defendant is guilty or is not guilty is improper, and the jury will not consider that."

This admonition clearly states the law and we think cured whatever error might have been made in the giving of the above statement.

In considering all of the above assignments of error it must be borne in mind that they are what might be termed as technical in their nature. The recent statement of Mr. Justice Frankfurter of the United States Supreme Court is applicable to this case when he stated:

"It is a commonplace in the administration of criminal justice that the actualities of a long trial are too often given a meretricious appearance on appeal; the perspective of the living trial is lost in the search for error in a dead record." Glasser v. United States, 62 S. Ct. 457, 473, 86 L. Ed. ....., decided January 19, 1942.

We have come to the conclusion after a review of the entire record that the voluntary statement of the wit-

ness in which he told the jury that the defendant had said that he had served a term in the penitentiary, and the statement of the prosecutor in his closing argument in which he made improper statements, were prejudicial and such as would improperly influence the jury in determining the amount of punishment which should be given to the defendant; and that, while there is no error in the record which would require a reversal of this case, these errors are of sufficient importance to require a modification of the punishment imposed.

It is therefore ordered that the judgment and sentence of the district court of Pottawatomie county be reduced from five years to three years in the State Penitentiary, and the judgment, as thus modified, is affirmed.

BAREFOOT, P. J., and DOYLE, J., concur.