## BUSTER·LEE GIBSON v. STATE.

No. A-10803.   Oct. 15, 1947.
Rehearing Denied Nov. 26, 1947.
(186 P. 2d 667.)

Owen F. Renegar, of Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., and Hugh J. Adams, Co. Atty., of Guthrie, for defendant in error.

BAREFOOT, P. J.  Defendant, Buster Lee Gibson, was charged in the district court of Logan county with the crime of burglary in the second degree, was tried, convicted and sentenced to serve a term of five years in the State Penitentiary at McAlester, and has appealed.

For reversal of this case, it is contended:

"1. That the trial court erred in permitting this plaintiff in error to be tried on a purported information that did not charge a crime against the laws of the State of Oklahoma.

"2. That the trial court, over the objection of plaintiff in error admitted evidence that was improper and incompetent, irrelevant and highly prejudicial to this plaintiff in error.

"3. That the verdict and judgment are contrary to law.

"4. That the verdict and judgment are not supported by the evidence and said evidence is insufficient to sustain the allegation of any crime."

An examination of the record discloses that the defendant did not present a demurrer to the information filed in this case. By a long line of decisions, it has been held that where the information has not been challenged by demurrer or motion to quash, and defendant pleads to the information and goes to trial, any objection to the sufficiency of the information should be overruled if by any intendment, inference or presumption, it can be sustained. Edwards v. State, 5 Okla. Cr. 20, 113 P. 214; Ex parte Spencer, 7 Okla. Cr. 113, 122 P. 557; Brown v. State, 33 Okla. Cr. 217, 242 P. 1065; Chamberlain v. State, 42 Okla. Cr. 410, 276 P. 507; Knight v. State, 48 Okla. Cr. 335, 291 P. 142; Smith v. State, 79 Okla. Cr. 151, 152 P. 2d 279.

Tit. 22, O. S. 1941 § 410 provides:

"No indictment or information is insufficient, nor can the trial, judgment, or other proceedings thereon be affected, by reason of a defect or imperfection in the matter of form which does not tend to the prejudice of the substantial rights of the defendant upon the merits."

In the case of Holleman v. State, 74 Okla. Cr. 258, 125 P. 2d 239, 242, the terms of the information were very similar to those in the instant case, and the court there said:

"This court has long adhered to the rule that in construing an information or indictment, it is not necessary to use the exact words set forth in the statute to define a public offense, but that other words conveying the same meaning may be used. That when the act or omission

charged as the offense is clearly and distinctly set forth in ordinary and concise language, without repetition, and in such a manner. as to enable a person of common understanding to know what is intended, the same is sufficient. Bowes v. State, 8 Okla. Cr. 277, 127 P. 883; Price v. State, 9 Okla. Cr. 359, 131 P. 1102; Armour v. State, 72 Okla. Cr. 44, 112 P. 2d 1116; Star v. State, 9 Okla. Cr. 210, 131 P. 542; Stine v. State, 43 Okla. Cr. 76, 277 P. 598."

This opinion by Judge Jones is based upon the reasoning of Judge Furman in the case of Price v. State [9 Okla. Cr. 359, 131 P. 1104], cited therein, in which it is stated:

"Under the old common-law doctrine of strictly construing criminal law and all proceedings in criminal cases, and that an indictment or information should be certain to a certain intent in every particular, the objection now urged to this information would undoubtedly be good. But these doctrines have long since been repudiated in the State of Oklahoma. It is true that an indictment should be reasonably certain as to the offense charged in order that the defendant may not be surprised and may be able to prepare to make his defense, and also to enable him to plead a judgment of acquittal or conviction in bar to a subsequent prosecution for the same offense. This is all that a defendant is in reason and justice entitled to. If an indictment is couched in such language as to enable a person of common understanding to know what is intended, it is all that the law requires."

The court further said [74 Okla. Cr. 258, 125 P. 2d 242]:

"As will be hereinafter pointed out in a review of the evidence, the proof of guilt of the defendant was clearly established and no evidence was offered in his behalf. If we were to sustain the objections made by counsel for defendant to this information, we would attach more importance to theories which are merely shadows than to substance and would elevate forms and ceremonies above

justice. While we would not recommend the information in this case as a model to be followed by other county attorneys in prosecutions for burglary, we are of the opinion that when measured by the rules of law hereinabove set forth, the court did not err in overruling the demurrer to the information."

See, also, Clark v. State, 63 Okla. Cr. 138, 73 P. 2d 481.

The information in the instant case did not mention the town of Coyle, where the crime was committed and in which the building entered was located. But, as above stated, no demurrer was filed, and no question was raised with reference thereto at any time during the trial. There was no showing that defendant or his counsel were in any way misled or prejudiced by the description contained in the information. It was stated in the information that the crime was committed "at and within the county of Logan, State of Okla., on or about the 24th day of January, A. D. 1946 * * *." The proof showed it was in the town of Coyle, and the court will take judicial knowledge of the fact that Coyle is located in Logan county.

Under the second assignment of error, it is contended that the court erred in permitting to be read to the jury the transcript of the evidence of Dr. N. L. Cornwell which was taken at the preliminary examination; the reason for such contention being that no proper foundation had been shown for its admission, and no diligence shown to secure the attendance of this witness at the trial.

It is revealed by the record that Dr. Cornwell, whose office was entered, testified at the preliminary examination, and his evidence taken down in shorthand, transcribed and filed in the office of the court clerk of Logan county, in the manner prescribed by law. At the time of the trial Dr. Cornwell was out of the state, having gone to

Hamilton, Ind., on account of his health. These facts were established by the evidence. Counsel for defendant at the time of the trial represented him at the preliminary hearing, and had the privilege of cross-examining this witness at the preliminary hearing, and this was a part of the record. The testimony of Dr. Cornwell was with reference to the location and description of his office, and the fact that someone did break and enter his office on the date charged. He did not testify to any facts as to the defendant being the person who broke into and entered his office.

In the late case of Brown v. State, 81 Okla. Cr. 314, 164 P. 2d 401, 404, the court said:

"If a witness has testified at a former trial, or at a preliminary hearing, and the defendant had an opportunity to cross-examine him, and when the case comes on for trial again it is satisfactorily proven that said witness is dead, or out of the state, or is insane, or that his whereabouts cannot with due diligence be ascertained, or is sick and unable to testify, the testimony of such witness, given upon said former trial, may be proven upon the subsequent trial. And the constitutional provision which guarantees to the defendant the right to be confronted by the witnesses against him, is fully complied with when he has had the right to cross-examine said witnesses at the former trial. * * *

"It is provided by Art. II, § 20, of the Oklahoma Constitution: 'In all criminal prosecutions the accused shall have the right to a speedy and public trial by an impartial jury of the county in which the crime shall have been committed: * * *. He shall be informed of the nature and cause of the accusation against him and have a copy thereof, and be confronted with the witnesses against him, and have compulsory process for obtaining witnesses in his behalf. * * *'

"And 22 O. S. 1941 § 13, subdiv. 3, is as follows: '3. To produce witnesses on his behalf, and to be confronted

with the witnesses against him in the presence of the court.'

"This court has on numerous occasions had the construction of the above statute under consideration. In the case of Warren v. State, 6 Okla. Cr. 1, 115 P. 812, 34 L. R. A., N. S., 1121, Judge Furman has fully discussed the question of one being 'confronted' by the witnesses against him, and many authorities are cited bearing upon this exact question, among them being: 2 Wigmore on Evidence § 1895, and Underhill on Criminal Evidence, 2d Ed., § 265. It is unnecessary to quote from this or other decisions. The main and essential purpose of confrontation is to secure the right of cross-examination. This right was given in the instant case, and defendant's counsel fully and ably cross-examined the witness, and this cross-examination was read to the jury as was the direct examination. Williams v. State, 42 Okla. Cr. 399, 276 P. 515; Foster v. State, 35 Okla. Cr. 70, 248 P. 847; Mendenhall v. United States, 6 Okla. Cr. 436, 119 P. 594; Stealer v. State, 10 Okla. Cr. 460, 138 P. 395; Bryant v. State, 33 Okla. Cr. 383, 244 P. 453."

See, also, Sweet v. State, 70 Okla. Cr. 443, 107 P. 2d 817.

We are of the opinion that it was not error to admit in evidence the transcript of the testimony of Dr. Cornwell given at the preliminary examination, under the facts in this case.

The next assignment of error is that the verdict and judgment are not supported by the evidence, and the evidence is insufficient to sustain the allegation of any crime.

The evidence in this case reveals that Dr. N. L. Cornwell was a practicing physician with an office in the small city of Coyle, Logan county. On the night of January 24, 1946, his office was entered by tearing a screen from the window of the building, and forcing the window open.

The office was on the first, or ground floor, and consisted of five room—a small storage room, a drug room, a small sleeping room, and also a private office and reception room.

The nightwatchman, Abijah R. Anderson, testified that on the night of January 24, 1946, he saw defendant and another party on the streets of Coyle. He followed them, and saw them go around to the rear of Dr. Cornwell's office, and stand there for a short while. They then returned to the street, and mingled with the crowd. The marshal then called Elmer Hillerby, who was in the hardware business in Coyle, but who had a commission from the sheriff of the county, and asked him to assist him. Together they went to the building in which Dr. Cornwell's office was located, and they found the defendant in the building. A screen had been torn from a window on the west side of the building, and the window was up. All of the doors were locked. The nightwatchman had examined the doors prior to seeing the defendant.

Viola W. Ford, Dr. Cornwell's office assistant, testified that she and the doctor left the office together and locked all doors, and that the window in question was closed. They left the building shortly after dark. She further testified that the defendant Gibson called the doctor's home and she answered the telephone. He asked for the doctor, and when she informed him that the doctor was out on a call, he asked how soon he would return. He stated that he had a patient he wanted to take to the doctor. In about ten minutes he called again, and they had practically the same conversation, and he stated he had a patient who was hemorrhaging, and insisted on knowing how soon the doctor would return. About 15 or 20 minutes after the second conversation, Mr. Hillerby called her and

stated that there was someone in the doctor's office, and asked her to come down and unlock the door. She went immediately, and when she arrived she saw Mr. Hillerby "standing there at the window watching Gibson up in the corner office." She heard Mr. Hillerby say, "Drop it, come out of there, what are you doing in there?" She saw the defendant with "a little hypodermic case in his hand and he backed up against the wall to keep anyone from seeing him in there." Mr. Hillerby then called the nightwatchman and Mr. George Young, a barber, who was at the rear, watching the back door. The defendant was arrested and turned to the sheriff of Logan county who had been called.

George Young, a barber, a witness for the state, testified to seeing the defendant and other party on the streets of Coyle, and that they asked him if there was a doctor in town, and he directed them to Dr. Cornwell's office. The defendant answered that he had been there and the doctor was not in, and he asked where he lived. The witness went into a restaurant, and the defendant and his companion went in about the same time. He heard the defendant call Dr. Cornwell over the telephone, but did not hear what he said. Witness left the restaurant and went to bed about 10:30. Soon thereafter he heard a noise, and went to the back of the building, and saw the defendant and the party who was with him in the restaurant standing by the window. He testified:

"Q. The same two men you had seen earlier in the evening? A. Yes, sir. Q. Was this defendant one of them? A. Yes, sir, and I hollowed at them and told them to get away from there, I might take a shot at them, and they disappeared and I went back to bed. And in 15 or 20 minutes I heard a noise again, and I got up and came back to the back again, where my back door and this other door is about eight feet from that window. * * * Q. What,

if anything, did you see the defendant doing? A. When I went to the door the second time, I heard them tearing the screen off, and I thought it was a tub come off of the wall, and I looked and the small man was holding the window up and Mr. Gibson was going in. Q. You are positive it was this defendant? A. Yes, sir. Q. And that was some time between 10:30 and 11 o'clock? A. It was on or about 11 o'clock. Q. What was the condition of the light out there? A. When I opened my back door, it was fairly light out there, the light in the back part of the dry-goods store, and the cafe. Q. And those lights were all on? A. Yes, sir, the cafe stays open all night, and the light burns in the drygoods store all night. Q. And you can identify this defendant as the man you saw crawling in that window? A. Yes, sir. Q. And the other man was helping him? A. Yes, sir."

Mr. Hillerby testified to all the facts as above stated, and of the arrest of the defendant Gibson in the building, and to calling the sheriff and turning the defendant to him.

The above evidence clearly reveals that the office of Dr. Cornwell was entered by tearing the screen from the window, and opening the window by defendant and another party. The defendant was caught in the building in the very act of taking the doctor's supplies. There might be a strong inference that the defendant was in search of some narcotic drug, but we know of no law which permits the breaking and entering of a building for the purpose of the larceny of narcotics. The law recognizes no such distinction. If this were true, it could be presented to the jury for their consideration.

The defendant testifying in his own behalf admitted entering the building, but stated he entered through the door, which was open. He denied knowing anything about the screen being off the window, or that the window was

open. He denied entering the building through the window. He claimed he was attempting to see Dr. Cornwell for his friend, Martin, who was ill. He also testified that both he and Martin had been to see the Doctor once prior to this time, about December 15, 1945, and the doctor had treated Martin, and given him a box of medicine, and told him to return in about two weeks. The Doctor testified that he did not know the defendant or Martin, and had never seen them before, to his knowledge. Viola Ford, who worked in the Doctor's office, also testified that she had never seen either of the parties before. All of this evidence was for the consideration of the jury.

Finding no error, the judgment of the district court of Logan county is affirmed.

JONES and BRETT, JJ., concur.