As to failure of the prosecution to introduce the liquor involved in evidence, see Bryson v. State, Okl.Cr., 248 P.2d 253; State v. Gragg, 71 Okl.Cr. 213, 110 P.2d 321, 322.

The argument of counsel was transcribed in full in the case-made and shows that the following statement of the county attorney was objected to on the ground that it amounted to a comment on the fact that defendant did not testify. The statement reads:

"I qualified you carefully as to following the evidence, as introduced on this stand. There has not been one bit of contradiction of my evidence."

This court has heretofore held against the contentions now urged. See Clark v. State, 91 Okl.Cr. 210, 218 P.2d 410.

Finding no error, the case is affirmed.

JONES and BRETT, JJ., concur.

## ACTON v. STATE.
### No. A–11778.

Criminal Court of Appeals of Oklahoma.
Sept. 9, 1953.

Geb, Fredericks, and Moriarty, Ponca City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., R. E. Havens, County Atty., Osage County, Pawhuska, for defendant in error.

POWELL, Presiding Judge.

By information filed in the district court of Osage County, Donald Acton was charged along with Billie Mackey and Bill Bussey while acting together with one Robert Moon, with having burglarized a hardware store in Webb City, and having taken various items of personal property enumerated in the information. Appellant herein, Donald Acton, who will hereinafter be referred to as defendant, was tried separately before a jury, resulting in his conviction of burglary in the second degree, with punishment assessed at imprisonment in the State Penitentiary for the period of two years. Appeal has been perfected to this court.

The Attorney General had some difficulty in following the argument in defendant's brief, and has complained at length. We find his complaint not without foundation. Rule 7 of this court, 22 O.S. 1951 c. 18 Appendix, sets out precisely the requirements as to the preparation of a brief to be filed in this court. Attorneys would profit by following the requirements prescribed. The rule in question is set out as a preface to 88 Oklahoma Criminal Reports.

We have carefully read the brief of appellant, irrespective of the basis in fact for the complaint of the Attorney General. We have also read the complete record.

The defendant did not testify and offered on evidence. The State offered the evidence of nine witnesses, including the testimony of a Mr. Ransch, owner of the hardware store in Webb City, shown to have been burglarized the night of October 24, 1950.

Mr. Ransch testified that persons entered his store through a window in the west end of the store by pushing it up with sufficient force to bend up nails that he had used to fasten the window. He found that a knife case filled with knives, shot gun shells, 82 boxes of .22 calibre rifle shells, padlocks, an electric iron and various other items and $12 in cash consisting of pennies, nickels and dimes, were stolen. He called the officers who came out, made casts of a shoe heel print, tire print, etc. Witness testified that later most of the stolen goods were re-

covered by the officers and he identified the same at the sheriff's office at Pawhuska. The knives and other items had his cost mark thereon.

A. L. Barger, deputy sheriff, testified to answering the call from Mr. Ransch at Webb City and finding a window that had been forced open, finding the store ransacked, getting a list from the owner of the missing articles; that he traced footprints in the mud from the back door of the store up an alley to where a car had apparently been parked; that he made a cast of a shoe heel and that he picked up a Fuller screw driver and some other articles that had come from the store and been dropped in the alley. This witness testified that before leaving Webb City he received a call from Curtis Greer of the police force of Ponca City stating that Donald Acton and some other boys had been arrested and were in jail there, and witness drove to Ponca City and there found some of the knives bearing the cost mark of Mr. Ransch; that he talked to Donald Acton a couple of times, advising him of his constitutional rights to be represented by a lawyer and that anything that he might say might be used against him and that he did not have to talk at all if he did not want to, but Acton told him that he was tired and he wanted to talk to the other boys and if he would come back the next day he would talk to him. Witness stated that when he went back the next day the officers had recovered practically all of the stolen property, and Acton told him that he had taken the officers out to a place in Osage County where the loot was hidden. Witness further testified:

"He [Acton] told me just how they went over there, that they went to Burbank first and stopped there at a restaurant and from there up through the field and on over to Webb and went in this hardware store.

"Q. Did he say who he was talking about when he said 'them'? A. He was speaking of Bussey, Mackey and Moon.

"Q. Was there anything said by Don Acton with reference to how they got into this store over at Webb City? A.

Yes, sir, I talked to him about the window and he said they just raised it, that they didn't use no jimmy on it, just raised the window and went in."

Marion Butterfield, police officer, testified that he arrested defendant about midnight of October 24, 1950, in Ponca City. That he searched defendant's car and found several "brand new" pocket knives in a box under the front seat of the car.

Poke Harsh, chief of police of Ponca City, testified to talking to Don Acton on October 25, 1950; that they took one Bill Bussey before Acton and asked Bussey if he had not said that he got one of the knives from Acton. Then Bussey said he got it from Acton two weeks before. He further testified:

"Q. State what else, if anything, was said in the conversation so far as the defendant Acton was concerned. A. Well, Don Acton, he didn't say anything at that time, he watched Bussey and what Bussey had to say, and then we took—we sent Bussey back upstairs and we talked to Don because I told Don that I was telling the truth, I wasn't lying to him about it and I said, 'Now what do you think?' and then Don said that he wanted to talk to the other boys, I believe at that time, that he might have to come in before that, and he asked me what would happen if they did find something else that was in this loot, and I told him that I could not make any promises as to what would happen and I could not speak for Osage County, that he would have to talk to the sheriff and deputy sheriff and they could not make any promises and the only thing they could do was to make a recommendation to the county attorney and he could make it to the Judge and the Judge didn't have to follow his recommendation.

"Q. Now after that conversation was there any other conversation had with Don Acton? A. Yes, sir.

"Q. State what it was so far as it refers to this hardware store and Mr. Ransch's place of business.

"The Court: And when it was.

"A. Well, that was after midnight and they said they would take us to where they had put a box of stuff that had come out of the hardware store, and we went out east of the Pioneer Woman to the Wittmer place, and we went south to that road—the Pioneer road goes east to where there was a curve in the road, and instead of making the curve we went off down there but it wasn't too far—oh, maybe as far as from here to the back of the room and there was a lot of Johnston grass there and in the grass was a box which contained some shotgun shells, twenty-two shells and some padlocks and a few screw drivers, and a pistol.

"Q. Who went with you out to the place where you found this box with these articles in it? A. It was Charlie Cass and Sid Wilson and Curtis Greer.

"Q. Was the defendant, Don Acton, with you on that trip? A. Yes, sir, he showed us where it was."

The evidence of the other witnesses corroborated the material testimony of officers Barger, Harsh and Butterfield as well as that of Mr. Ransch.

For reversal it is claimed that the information was duplicitous in that two crimes are charged: Burglary and grand larceny. We determine that the information is sufficient. See, for full treatment of the proposition, Holleman v. State, 74 Okl. Cr. 258, 125 P.2d 239 and Sheehan v. State, 83 Okl.Cr. 41, 172 P.2d 809.

It is contended that there is no evidence showing that a copy of the information and a list of State's witnesses were served on the defendant or his attorney. The record discloses that when the defendant was arraigned he was served with a copy of the information and acknowledged receipt of same, and the information had endorsed thereon the names and addresses of the witnesses. Nothing more was required.

The defendant claims that the trial court displayed partiality toward the State and prejudiced the defendant by questions and rulings.

While the court did ask a number of questions of witnesses, it appears to have been in an effort to clarify the evidence of the witnesses and sometimes the answer developed was favorable to the State, and again it was not.

Finding no reversible error, the case is affirmed.

JONES and BRETT, JJ., concur.