**Melvin WASHINGTON, alias Jimbo Lee, Plaintiff in Error,**

**v.**

**The STATE of Oklahoma, Defendant in Error.**

**No. A–13889.**

Court of Criminal Appeals of Oklahoma.

April 12, 1967.

Charles V. Foor, McAlester, for plaintiff in error.

G. T. Blankenship, Atty. Gen., Hugh H. Collum, Asst. Atty. Gen., for defendant in error.

BRETT, Judge:

This is an appeal brought by Melvin Washington, alias Jimbo Lee, from a judgment and sentence rendered against him by the district court of Pittsburg County, Oklahoma, on September 23, 1965.

Defendant was charged with assault and battery with intent to kill. The jury found him guilty, and fixed his punishment at ten years confinement in the State Penitentiary. Title 21 Okl.St.Ann. § 652 provides the maximum penalty for the crime to be twenty years imprisonment.

It was alleged and sufficiently proved to the jury that on May 5, 1965 defendant drove his 1958 Oldsmobile automobile against the person of Sam Smith in an effort to kill him, while Smith was sitting on a bench in front of a barber shop in McAlester, Oklahoma. As a result of such action, both the victim and the bench were dragged a distance of twenty-five feet.

The witness Thomas H. McIntosh, produced by the State, testified that he saw the defendant in his automobile talking to another man, who had a few moments before been sitting on the bench with the victim, and that immediately after the man stepped back from the automobile, defend-

ant made a fast start forward with his car, and struck the victim and the bench. He stated further that the defendant had been drinking, but in his opinion the defendant was not so drunk that he did not know what he was doing.

The man who was seen talking to the defendant in his automobile, D. M. Clark, testified that he had been sitting on the bench with Sam Smith, and the defendant called him over to his car and told him to move away, that he was going to kill Sam Smith. Clark stated that when he stepped back, the defendant shot the gas to the car, and ran over the victim. He said that when the car stopped, defendant got out of the automobile and went to his room, where he lived.

The victim, Sam Smith, testified that he was sitting on the bench, and the next thing he knew he was in the hospital.

The officers, who made the measurements at the scene of the incident, testified that the street where the offense occurred was a gravel street; that the physical facts revealed that the automobile left 40 feet of tire marks from the point of starting to the point where it struck the bench where the victim was sitting; that both the victim and the bench were dragged a distance of 25 feet, and that the automobile travelled a distance of 81 feet from its starting point to where it came to a stop. The arresting officers stated that when they went to the defendant's room to arrest him, about thirty minutes after the offense occurred, he appeared to have been sleeping.

Defendant's testimony was to the effect that when he called D. M. Clark over to his car to talk to him he suggested they both go to Eufaula, Oklahoma, that night, and that Clark agreed to do so. He contended further that he started to back his car, but the car "jumped gear" and went forward, and that after the incident occurred he became excited, "shook up", and afraid, and that he thought he was going to the barber shop, but wound up in his room. He stated further that when he got to his room he went to bed and was almost asleep when the officers arrived. Defendant admitted that he had been drinking for several days, but denied that he told D. M. Clark to move away from the bench because he was going to kill Sam Smith. He also admitted that he had been arrested 27 times for such offenses as being drunk, fighting, possession of wild-car whiskey, etc.

While cross-examining the State's witness Thomas H. McIntosh, defense counsel attempted to corroborate defendant's contention of faulty automobile gears. McIntosh stated that the Sunday night before this offense occurred, he had driven defendant's car, and that he did have some trouble with the reverse gear. However, the jury apparently did not accept such testimony as being sufficient to excuse the defendant.

Defendant's motion for a new trial sets out two assignments of error. First, "Error of the court in overruling defendant's objection to introduction of certain evidence", and, second, "That a mistrial be declared due to the fact that one of the jurors was unqualified to sit in said cause, for the reason that he was not a resident of Pittsburg County, Oklahoma, as required by statute. However, we observe that defendant's second proposition was pursued no further, than setting it out in his motion for a new trial.

■ This Court has repeatedly held that we will only consider those questions on appeal which are incorporated in the motion for new trial, and thereby presented to the trial court for its ruling thereon, excepted to, and afterwards assigned for error, unless the question is jurisdictional. See: Fitzgerald v. State, 97 Okl.Cr. 106, 259 P.2d 333; Rapp v. State, Okl.Cr., 413 P.2d 915, and others not cited.

In his petition in error, defendant's only contention is "That the court misdirected the jury in a matter of law or erred in decision of any question of law arising during the course of the trial."

■ We observe, however, that counsel does not state in what respect the court

misdirected the jury; nor does he point out any error in the court's decisions pertaining to questions of law which arose during the trial. Notwithstanding this absence, we have carefully examined the court's instructions, and we are of the opinion that the instructions fairly state the law applicable to the case. Further, the record reveals that no objections or exceptions were made to any of the court's instructions, and that no instructions were requested by the defendant.

While admitting that the sentence should probably be affirmed, defense counsel urges that the sentence should be modified. He argued before the court that the deputy sheriff's prejudicial statement inflamed the jury, thereby causing an excessive penalty. On direct examination, in response to the county attorney's question, the deputy sheriff said, "we got a report that Jimbo done killed a man, so I got hold of him". Subsequently, on cross-examination, defense counsel asked: "They had reported to you that he had killed a man? A. Yes, sir. This came over the telephone. I answered the telephone and they said, 'Jimbo had done killed another man.'" However, the record shows that defense counsel failed to enter an objection to the statement at the time it was made.

■ This Court has many times condemned the practice of experienced officers making voluntary statements prejudicial to the rights of defendant while testifying as a witness. See: Holleman v. State, 74 Okl.Cr. 258, 125 P.2d 239; Riddle v. State, Okl.Cr., 373 P.2d 832, and others.

■■ In this case the deputy sheriff's statement was prejudicial, and in a close case this error might be sufficient to constitute reversible error. However, as in the instant case, where the evidence overwhelmingly supports the jury's verdict, such error standing alone is not sufficient to justify reversal of the conviction. And insofar as the sentence is only half of the statutory maximum, we fail to see how such error might be construed to have caused the sentence to be considered excessive.

We are, therefore, of the opinion that this case should be affirmed.

Judgment and sentence affirmed.

NIX, P. J., and BUSSEY, J., concur.